[Civ. No. 43297. Second Dist., Div. Five. Dec. 23, 1975.]

ARTHUR K. SNYDER et al., Plaintiffs and Appellants, v.
CITY OF SOUTH PASADENA, Defendant and Respondent.

1052

## COUNSEL

Burt Pines, City Attorney, Claude E. Hilker, Assistant City Attorney, and Norman L. Roberts, Deputy City Attorney, for Plaintiffs and Appellants.

Charles R. Martin and Patrick Lynch for Defendant and Respondent.

## OPINION

**ASHBY, J.**—This is an action filed by Arthur K. Snyder, Councilman of the Fourteenth District of the City of Los Angeles, on behalf of residents of said district, and by the City of Los Angeles seeking an injunction to restrain the City of South Pasadena from "closing" or barricading a certain street in the City of South Pasadena, on the ground that such action is not authorized by law. A preliminary injunction was granted. After a court trial based upon the stipulation of the parties that the matter be submitted upon documentary evidence, the trial court entered judgment for South Pasadena and dissolved the preliminary injunction. This appeal followed.

In the 1950's and 1960's the Community Redevelopment Agency of South Pasadena planned and developed a residential community known as Altos de Monterey, located in the southwest corner of South Pasadena, bordering the City of Los Angeles. Previously this area was generally undeveloped, owing largely to the fact that in the early 1900's it had been subdivided in a manner having no regard for the area's steep hills and valleys. South of the South Pasadena-Los Angeles boundary, in the City of Los Angeles, was Van Horne Avenue, a winding relatively narrow residential street which terminated at the city line. A few unpaved dirt roads continued from the terminus of Van Horne Avenue into the Monterey Hills of South Pasadena to provide access to a few

houses which had been built there, but did not provide a means of through travel to any other streets.

Pursuant to the master plan of the Community Redevelopment Agency, the street in controversy, Via del Rey, was built, extending in a winding pattern for approximately 1.25 miles from the terminus of Van Horne Avenue at the South Pasadena-Los Angeles boundary northward to Monterey Road in South Pasadena. Via del Rey was designed to be 60 feet in width and to serve as a "traffic collector street" to collect traffic from the other streets in the Altos de Monterey and to provide the principal avenue of ingress and egress for the eventual residents. It was never intended to be a major by-pass street or thoroughfare. The Altos de Monterey consists entirely of single family residences with the exception of an elementary school on Via del Rey. Approximately 150 of the 637 residential lots abut Via del Rey, with residential driveways at intervals of 60 to 100 feet.

In 1968 Los Angeles announced plans to widen and improve Van Horne Avenue between the South Pasadena-Los Angeles boundary and Huntington Drive in Los Angeles, approximately .6 mile to the south. South Pasadena objected to the proposed improvement of Van Horne, stating that it would create a situation which would turn Via del Rey into a major thoroughfare through a prime residential area.[1] Nevertheless, in 1971 Los Angeles spent over $256,000 in gasoline tax funds to improve Van Horne to Huntington Drive.

Thirteen hundred to fifteen hundred vehicles daily cross the Los Angeles-South Pasadena border at the confluence of Via del Rey and Van Horne Avenue. Some of this traffic originates from outside the immediate vicinity and uses the streets as a thoroughfare between Huntington Drive and Monterey Road. Excessive auto traffic became a matter of concern to the residents of the Altos. South Pasadena tried several methods of controlling the traffic, such as stop signs, reduced speed limits, and increased traffic surveillance, but none of these measures proved effective.

---

[1] On March 27, 1968, the City Manager of South Pasadena, on behalf of the mayor, wrote to the Mayor of Los Angeles that "[i]t was never the intention of either the City of South Pasadena or the Community Redevelopment Agency of South Pasadena to ask that Van Horne be improved all the way to Huntington Drive. We feel very strongly that if Van Horne were to be improved all the way to Huntington Drive instead of just 120 feet for transition, a situation would be created which would turn Via del Rey into a major thoroughfare through a prime residential area."

On November 7, 1973, after notice by publication and posting, at a regular meeting of the City Council of South Pasadena, a hearing was held on the proposed closure of Via del Rey. The city council approved a motion to close Via del Rey at Camino Verde, the first intersection with Via del Rey north of the South Pasadena-Los Angeles boundary and within the City of South Pasadena. The city council's findings were memorialized in resolution number 5139, as amended by resolution 5151, as follows:

"(a) That Via del Rey is no longer needed and never has been needed as a conveyor of through traffic, rather such street is needed and has always been intended to serve as a collector of residential and residentially related traffic in the Altos de Monterey community of this City, and the carriage of substantial through traffic is inconsistent with and inimical to that intended use in that such traffic detracts from the peace, safety and livability of the residential environment of said community;

"(b) That if Via del Rey is not closed to through traffic, a substantial and increasing volume of such traffic may be expected to use Via del Rey solely as a through street. Such volume of through traffic is in excess of the volume of incidental through traffic foreseen when Via del Rey was designed, and is inimical to the fine residential environment which it has always been a public purpose of this City to establish and foster in Altos de Monterey;

"(c) That at the time of the subdivision of the 'Altos', a commitment was made by this City Council to close Via del Rey to through traffic as soon as practicable;

"(d) That Via del Rey is a residential street of quality homes now carrying an excessive volume of auto traffic;

"(e) That such excessive traffic is replete with hazard, noise, pollution, speed, accidents and other ramifications inimical to the peace, safety and welfare of the neighborhood in and around Via del Rey and Camino Verde;

"(f) That such problems have caused a diminution of property values in such area;

"(g) That such traffic is not primarily caused by residents but rather as a through way and shortcut for people living substantial distances from this residential area;

"(h) That the closure of Via del Rey at Camino Verde would substantially reduce the police problems at such area without substantially damaging any property owner or without requiring excessive circuitry of travel by the public; and

"(i) That such closure of Via del Rey would be a proper exercise of the police power.

"Now, Therefore, Be And It Is Hereby Resolved, and heretofore has been resolved that Via del Rey shall be closed for all vehicular traffic at Camino Verde until such time as traffic flow, volume, and hazard shall indicate to this City Council that such street may be again opened without risk or diminution of property values."

Since a temporary restraining order and a preliminary injunction were issued, the plan has not yet been put into effect, and South Pasadena has voluntarily refrained from closing the street pending this appeal. The exact nature of the "closing" is not made clear in the record, but we gather that the plan is to install barricades or curbs across Via del Rey at Camino Verde effectively blocking traffic between the major portion of Via del Rey and Van Horne Avenue. Apparently Via del Rey is to remain open between the barricade and Monterey Road to the north.

### Contentions

Appellants contend the closing was not authorized by law; that South Pasadena should be estopped to close Via del Rey; and that South Pasadena failed to comply with the California Environmental Quality Act. None of these contentions has merit.

### Discussion

█ The action taken by the City Council of South Pasadena was within its discretion and within its powers to protect the health, safety and general welfare of its citizens. Via del Rey was designed as a residential street. Although it was the main "collector" road for the residents of the Altos, it was never intended to be a carrier of through traffic between Huntington Drive and Monterey Road. It had 150 private residential driveways and an elementary school which rendered it inappropriate for through traffic. At the time Via del Rey was planned and constructed, it was connected to an unimproved Van Horne Avenue. Evidence was presented to the trial court that Via del Rey is now

carrying heavier traffic and a different type of traffic than it was ever intended to carry. Evidence was presented as to traffic accidents which occurred on Via del Rey and complaints of the residents concerned with noise, danger to the school children, and the interruption of the quiet residential character of the neighborhood. Alternative measures, such as traffic controls and reduced speed limits, had proved ineffective against the problem. The city council's and trial court's findings that closing of Via del Rey at Camino Verde would not require "excessive circuity" of travel by the public was supported by evidence concerning the availability of Fremont Avenue and Fair Oaks Avenue, 1.6 and 1.7 miles, respectively, to the northeast, both of which connected Huntington Drive to Monterey Road. Fremont and Fair Oaks are level, signal-controlled streets zoned for commercial, professional or multiple residence uses. The action of the city council merely reroutes through traffic to more appropriate streets. Since Via del Rey will apparently remain open between Monterey Road and Camino Verde, it cannot be said that the action of the city council results in vacating or abandoning Via del Rey.

The cases cited by appellants stand for the proposition that control of the streets and highways is vested primarily in the State of California, and that a municipality may not interfere with the streets in a manner which is inconsistent with state law.[2] However, appellants have failed to demonstrate that the action of the city council conflicts with state law. Under the Constitution a city "may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) As a general law city, South Pasadena may exercise "those powers expressly conferred upon it by the Legislature, together with such powers as are 'necessarily incident to those expressly granted or essential to the declared object and purposes of the municipal corporation.'" (*Irwin* v. *City of Manhattan Beach,* 65 Cal.2d 13, 20 [51 Cal.Rptr. 881, 415 P.2d 769].) Moreover, the Legislature has conferred on cities broad general powers with respect to maintaining streets. (*Irwin* v. *City of Manhattan Beach, supra,* at p. 22 & fn. 1; Gov. Code, § 40401; Veh. Code, § 21101.)

Vehicle Code section 21101, subdivision (a), provides: "Local authorities may adopt rules and regulations by ordinance or resolution on the

[2] *People* v. *County of Marin,* 103 Cal. 223, 232 [37 P. 203]; *Ex parte Daniels,* 183 Cal. 636, 639 [192 P. 442, 21 A.L.R. 1172]; *Atlas Mixed Mortar Co.* v. *City of Burbank,* 202 Cal. 660, 663 [262 P. 334]; *Keller* v. *City of Oakland,* 54 Cal.App. 169, 172 [201 P. 618]; *City of Imperial Beach* v. *Algert,* 200 Cal.App.2d 48, 51 [19 Cal.Rptr. 144]; *Clay* v. *City of Los Angeles,* 21 Cal.App.3d 577, 587 [98 Cal.Rptr. 852]; *Harman* v. *City and County of San Francisco,* 7 Cal.3d 150, 162 [101 Cal.Rptr. 880, 496 P.2d 1248].

following matters: [¶] (a) Closing any highway to vehicular traffic when in the opinion of the legislative body having jurisdiction the highway is no longer needed for vehicular traffic." Appellants seek a strained and narrow interpretation of the word "needed." They argue that where the very reason for the closing is that substantial and increasing numbers of vehicles are in fact using the street, it cannot be said the street is "no longer needed." Appellants contend that in interpreting the word "needed" the city council may not take into consideration such factors as the intended use of the street for residential purposes, the protection of the quiet residential character of the community, and the elimination of hazards to the residents and school children caused by the use of the street for through traffic. In other words, appellants argue that so long as a substantial number of vehicles use Via del Rey, the city council is without authority to determine the street is no longer needed for through traffic, despite the fact that other more appropriate streets such as Fremont and Fair Oaks are available for through traffic without undue inconvenience to the public. We find no basis for such a narrow interpretation of section 21101, subdivision (a).

In *Simpson v. City of Los Angeles,* 4 Cal.2d 60, 66-67 [47 P.2d 474], the Supreme Court upheld the closure of Olvera Street in the City of Los Angeles, stating that the city had the power "to prohibit all vehicular traffic on any particular street when reasonably necessary to facilitate the flow of traffic or to promote the public health, safety or general welfare. The right to exercise the police power generally has been conferred upon the city by its charter, including the power to enact measures in the use and control of its streets not in direct conflict with general law." The court stated that the enactment of the predecessor to Vehicle Code section 21101 "recognized [the] existence" of this power. Appellants attempt to distinguish *Simpson* on the ground that prior to the ordinance relating to Olvera Street "there was but little vehicular traffic on it and that the use of the street for through vehicular traffic was then and is now neither necessary nor convenient for the purpose of arriving at any stated destination." (*Id.* at p. 66.) However, the significance of *Simpson* is that it recognizes the power to control vehicular traffic "when reasonably necessary to facilitate the flow of traffic or to promote the public health, safety or general welfare," and that it suggests a liberal interpretation of Vehicle Code section 21101, subdivision (a). In the instant case the action of the city council was to promote the health, safety and general welfare of the residents of the Altos and was reasonably necessary to facilitate the flow of traffic, since the council could reasonably find that Via del Rey was not suited to bear the burden of through traffic. It could

reasonably be concluded that Via del Rey was not "needed" for through vehicular traffic since Fremont Avenue and Fair Oaks Avenue could be used for that purpose without undue inconvenience. We find that the enactment of this measure was authorized by law.

Appellants next contend that South Pasadena should be estopped to close Via del Rey because Via del Rey had previously been designated by South Pasadena as a "select system" street which was coordinated with Los Angeles' select system streets, pursuant to Streets and Highways Code sections 186.3 and 186.4. Streets and Highways Code section 186.3 requires a city to establish a select system of streets in order to qualify for highway users tax funds. Section 186.4, subdivision (b), requires select system streets to meet one or more of the following criteria: (1) provide an important traffic connection to a route in the state highway system; (2) be an important lateral between two or more routes in the state highway system; or (3) afford substantial traffic relief to one or more routes in the state highway system. Section 186.4, subdivision (c), requires a showing be made in each city's report that every route in its select system is coordinated with the select system routes in contiguous local jurisdictions. On August 19, 1964, South Pasadena filed a report with the California Highway Commission including Via del Rey in its select system and certifying that its system was coordinated with arterials of contiguous jurisdictions. It is not apparent from the record on what basis South Pasadena designated Via del Rey as a select system street.[3]

Appellants argue that it is inconsistent for South Pasadena to argue Via del Rey was not intended as a through street, having designated it as a select system street in 1964. However, Streets and Highways Code section 186.3, subdivision (b), permits changes in a city's select street system. Whether Via del Rey qualifies as a select system street is basically a matter between South Pasadena and state highway authorities.

Appellants also argue that Los Angeles relied upon Via del Rey's designation as a select system street when Los Angeles spent $256,000 improving Van Horne Avenue. However, there is no specific support in the record establishing such claimed "reliance," nor did the trial court find there had been "reliance." The 1968 letter from the City Manager of

---

[3]We do note, however, that Streets and Highways Code section 186.4, subdivision (d), entitles a city to include in its select system as many miles of city streets as were included in its approved system of major city streets in 1963, "[n]otwithstanding any other provisions of this section."

South Pasadena to the Mayor of Los Angeles showed that South Pasadena did not request the improvement and in fact objected to it for the very reason that it would create a major thoroughfare inconsistent with the residential character of the neighborhood.

We conclude South Pasadena's previous designation of Via del Rey as a select system street does not provide a basis to estop South Pasadena to take the action ordered by the city council in this case.

■ Finally, appellants contend South Pasadena did not comply with the California Environmental Quality Act. This contention is without merit. A report filed by the planning and building department concluded that the project will have no substantial adverse physical effect on the environment, stating: "Traffic, the only consideration, would be via other streets for access to & from the Altos de Monterey area. Some streets with less than 40 ft. between curbs might be affected to some degree."[4]

An environmental impact report need not be filed unless the effects of a project may have a substantial adverse impact on the environment. (Pub. Resources Code, § 21151; Cal. Admin. Code, tit. 14, §§ 15083, 15084.) The report of the planning and building department concluding that the project will not have a significant adverse effect upon the environment was found by the trial court to comply with the requirement of a "Negative Declaration." (Cal. Admin. Code, tit. 14, § 15083. See *Bozung v. Local Agency Formation Com.,* 13 Cal.3d 263, 280 & fn. 22 [118 Cal.Rptr. 249, 529 P.2d 1017].) The city council's conclusion the project would not have a significant adverse effect on the environment is supported by substantial evidence. (See Pub. Resources Code, § 21168.5; *Plan for Arcadia, Inc.* v. *City Council of Arcadia,* 42 Cal.App.3d 712, 725 [117 Cal.Rptr. 96]; *Hixon* v. *County of Los Angeles,* 38 Cal.App.3d 370, 381-382 [113 Cal.Rptr. 433].) In fact, there is no evidence the project would have a significant adverse effect on the environment. Appellants simply assume that the fact traffic will be rerouted to other streets constitutes a significant adverse effect on the environment, but there is

---

[4]The report attached a copy of a recommendation from a city council administrative committee that, "[c]onsidering that there is currently a known existing traffic pattern, and that Via del Rey was designed as a select system street, rerouting of traffic by the closing of Via del Rey would possibly create unforeseen factors that would be more intolerable than those that currently exist," but that recommendation was not necessarily inconsistent with the conclusion of the planning and building department. It merely speculates about *unstated possible unforeseen factors,* which are not even clearly shown to be environmental factors.

no showing that such is the case. Nor is there any evidence to support appellants' claim of significant adverse environmental effects outside South Pasadena.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied January 12, 1976, and appellants' petition for a hearing by the Supreme Court was denied February 18, 1976.