[Civ. No. 3504. Fifth Dist. Mar. 14, 1978.]

TSUN HAI LEE et al., Cross-complainants and Appellants, v.
LOST HILLS WATER DISTRICT, Cross-defendant and Respondent.

COUNSEL

King, Eyherabide, Anspach, Friedman & Robinson and Stephen Eyherabide for Cross-complainants and Appellants.

Owen F. Goodman for Cross-defendant and Respondent.

OPINION

BROWN (G. A.), P. J.—Lost Hills Water District, respondent herein (hereinafter District), is a California Water District in Kern County organized under division 13 of the Water Code. It has contracted with the California Department of Water Resources to receive certain quantities of water from the California Aqueduct for the purpose of providing irrigation water to the lands located within its boundaries. The area within the District boundary east of the California Aqueduct is divided into Eastside 1 Service Area, lying easterly of Interstate Highway 5, and Eastside 2 Service Area, lying westerly of Interstate Highway 5. (See appen. 1.)

The District undertook to develop a system of irrigation works for Eastside 1 Service Area. In order to transport water to that district from the California Aqueduct it was necessary to condemn easements and fee estates over and through Eastside 2 Service Area from turnout No. 5 on the aqueduct to Eastside 1 Service Area for a pipeline and appurtenant facilities. (See appen. 1.) Accordingly, on September 16, 1976, the District filed its complaint in eminent domain against the owners of the property in Eastside 2 Service Area over and through which the pipeline passed (point A to point B on appen. 1). Some of these owners, appellants herein, filed a cross-complaint against the District, asking that the District be enjoined and restrained from proceeding with the Eastside 1 Service Area project. The thrust of the cross-complaint is that the District cannot proceed because the project will have a significant effect upon the environment and the District has not complied with the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).

The District's motion for summary judgment on the cross-complaint was granted. The owners have appealed.

The salient facts are not in dispute. In September 1974 the District adopted a plan of works for Eastside 1 Service Area which described the entire project, including the facilities to be acquired and used in Eastside 2 Service Area as part of the project. Thereafter, pursuant to section 15080 of the state guidelines (Cal. Admin. Code, tit. 14, § 15000 et seq.) and section 4.01 of the District's procedures for environmental evaluations and preparation of environmental impact reports (EIR),[1] the District made an extensive initial study entitled "Lost Hills Water District Environmental Investigation Re Proposed Eastside 1 Project." The study, which was approved by the District on November 14, 1974, concluded that the proposed project would have no significant effect upon the environment and recommended that the board execute and file a negative declaration in accordance with the provisions of Public Resources Code section 21080, California Administrative Code, title 14, section 15083, and section 4.04 of the District's own procedures.[2] On November 14 the District's board adopted these recommendations.

Pursuant to the District's action, the negative declaration dated November 14, 1974, stating among other things that "the proposed project will have no significant adverse impact or effect on the

---

[1]The District's procedures were adopted pursuant to the direction and authority contained in Public Resources Code section 21082.

[2]An EIR need not be filed for a project which has no significant effect upon the environment. (*Snyder v. City of South Pasadena* (1975) 53 Cal.App.3d 1051, 1060 [126 Cal.Rptr. 320].)

environment," was filed with the County Clerk of Kern County on November 15, 1974. Notice of that filing, which repeated the negative declaration verbatim, was published in the Bakersfield Californian on November 20, 1974.[3] The notice also fixed December 12, 1974, as the date and stated the time and place where members of the public might appear before the District's board to present their views prior to the board's determining to approve or disapprove the project.

On December 12, 1974, no one appeared before the board. The board voted to approve the project and pursuant to Public Resources Code section 21152[4] executed and filed a notice of determination with the County Clerk of Kern County on December 12, 1974.

### DISCUSSION

Determinative of this appeal is subdivision (b) of section 21167 of the Public Resources Code which provides:

"Any action or proceeding to attack, review, set aside, void, or annul the following acts or decisions of a public agency on the grounds of noncompliance with this division shall be commenced as follows:

" .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(b) Any action or proceeding alleging that a public agency has improperly determined whether a project may have a significant effect on the environment shall be commenced within 30 days after the filing of the notice required by . . . subdivision (a) of Section 21152." This provision operates as a special statute of limitations as to actions and proceedings founded on alleged violations of CEQA. (*Walters* v. *County of Plumas* (1976) 61 Cal.App.3d 460, 469 [132 Cal.Rptr. 174].)

In the present case the notice of determination pursuant to Public Resources Code section 21152 was filed in the office of the county clerk

---

[3]This publication satisfied the notice requirements then in effect pursuant to California Administrative Code, title 14, section 15083, subdivision (d). It was not until Public Resources Code section 21092 was enacted in 1976 that more extensive notice was required by statute to be given to the public.

[4]Public Resources Code section 21152 provides in pertinent part: "(a) Whenever a local agency approves or determines to carry out a project which is subject to the provisions of this division, it shall file notice of such approval or such determination with the county clerk of the county, or counties, in which the project will be located. Such notice shall indicate the determination of the local agency whether the project will, or will not, have a significant effect on the environment and shall indicate whether an environmental impact report has been prepared pursuant to the provisions of this division."

on December 12, 1974. By the express terms of Public Resources Code section 21167, subdivision (b), the filing of the notice of determination triggered the commencement of the 30-day period of limitations. The cross-complaint was filed on March 18, 1977. It follows the statute of limitations had clearly run on the cause of action of the cross-complaint predicated upon the alleged invalidity of the District's determination that the project would have no significant impact on the environment.

No contention is made herein that all statutory requirements of notice were not complied with by the District. Appellants argue, however, that due process requires that they be given more or better notice than that prescribed by the statute. We do not agree. The general rule is that a statute of limitations will begin to run whether or not an aggrieved party knows of his cause of action. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d 421].) In this instance the statute expressly provides that the limitation period commences upon the filing of the notice of determination to approve or carry out a project, and we perceive no basis upon which this court could alter that legislative determination. Accordingly, the lack of personal notice to appellants would not make the statutory period of limitations inapplicable.

■ Moreover, the CEQA is a creature of the Legislature, exercising political rather than judicial or administrative power. Because of that fact and the fact that the preparation of an EIR or determination that one need not be filed does not deprive the owners in the impacted areas or members of the public of property rights in the constitutional sense, the Legislature could have constitutionally omitted any requirement of notice to anyone. (See *Bookout* v. *Local Agency Formation Com.* (1975) 49 Cal.App.3d 383, 386-387 [122 Cal.Rptr. 668].) Accordingly, there were no due process strictures on the mode, nature or type of notice that had to be given before adopting or filing such a report or a negative declaration.

■ Appellants also argue that the District was required to file an EIR or negative declaration covering Eastside 2 Service Area. The argument has no merit. By its terms the Eastside 1 Service Area *project* covered the area in Eastside 2 Service Area being condemned for the pipeline. The negative declaration and notice of determination covered the entire project from turnout No. 5 on the California Aqueduct (point A) to point B in the Eastside 2 Service Area and the entire area in Eastside 1 Service Area. A "[p]roject means the whole of an action, which has a potential for resulting in a physical change in the environment, directly or ultimately. . . ." (Cal. Admin..Code, tit: 14, § 15037, subd. (a); Pub. Resources Code, § 21065.) A single activity does not become a series of

projects simply because it may affect lands or owners within various service areas of a water or irrigation project. There need be only one EIR or determination that no EIR is required with regard to a single project. (See Pub. Resources Code, § 21152.)

There being no issue of fact for resolution by the trier of fact, and the District having complied with the law, the trial court correctly entered a summary judgment for the District on the cross-complaint.

The judgment is affirmed.

Franson, J., and Hopper, J., concurred.

---

APPENDIX 1

Eastside 2
Service Area

Eastside 1
Service Area

N

California Aqueduct

Interstate Highway 5

B

Turnout 5--

A

Not to Scale; Illustrative Only.

*****Area being condemned
for pipeline.