[Civ. No. 23510. Fourth Dist., Div. Two. Feb. 11, 1981.]

INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSE-MEN'S UNION, LOCAL 35 et al., Plaintiffs and Appellants, v. BOARD OF SUPERVISORS OF SAN BERNARDINO COUNTY, Defendant and Respondent.

COUNSEL

Michael R. Jencks, Richard M. Marx, Kathryn Burkett Dickson and Antonio Rossmann for Plaintiffs and Appellants.

Alan K. Marks, County Counsel and Edward Duddy, Deputy County Counsel, for Defendant and Respondent.

---

OPINION

TAMURA, J.—This is an appeal from a judgment denying a petition for writ of mandate to compel the Board of Supervisors of San Bernardino County, acting as the governing board of the San Bernardino County Area Air Pollution Control District (hereafter Air Pollution Control District),[1] to set aside an amendment to the district rules relaxing the oxides of nitrogen ($NO_X$) emission standards for certain facilities in the county. Plaintiffs alleged that the rule changes were invalid because the board failed to comply with the requirements of the California Environmental Quality Act (CEQA).[2] The court denied the petition on the ground the action was barred by one or more of the statutes of limitation prescribed by CEQA. The central issue on this appeal is which of the several periods of limitation set out in CEQA governs the instant proceeding.

Kerr-McGee Chemical Corporation (hereafter Kerr-McGee) owns and operates an alkaline mining facility in Trona in San Bernardino County. In 1973, Kerr-McGee requested the county to approve a site and development plan for the reconstruction and expansion of its facilities, including the installation of two large Argus boilers to provide steam to generate electricity for the plant. The boilers were to be fired by petroleum coke, oil or natural gas. An environmental impact report (EIR) was prepared and certified for the project.

On July 1, 1974, the board of supervisors acting as the governing board of the Air Pollution Control District authorized Kerr-McGee to proceed with its plant reconstruction and expansion, including the installation of the Argus boilers, subject to compliance with district rule 68 which prohibited $NO_X$ emissions in excess of 225 parts per million

---

[1] The county board of supervisors is the ex officio governing board of the county Air Pollution Control District. (Health & Saf. Code, § 40100.)

[2] CEQA is contained in Public Resources Code section 21000 et seq. Unless otherwise indicated, all section references in this opinion are to the Public Resources Code.

(ppm).[3] One of the conditions in the authorization provided that if the Argus boilers cannot meet the rule 68 standard by utilizing best available techniques, the district "will request and recommend a change in Rule 68 allowing nitrogen oxide emissions using solid fuel consistent with the best technology tha[t] can be demonstrated by the plant."

In May 1975, the board, in its capacity as the county board of supervisors, certified a supplemental EIR, the preparation of which was necessitated by a number of changes in Kerr-McGee's project, including modification of the Argus boilers to permit use of coal (as well as petroleum coke, oil and natural gas) to fire the boilers. The supplemental EIR noted that one of the major adverse impacts of the modification was the potential increase in $NO_X$ emissions from the use of coal and in assessing the impact, the report assumed that $NO_X$ emissions would be increased from 225 ppm to 500 ppm. Among other actions taken by the board at its May meeting was its indication that should rule 68 be modified to relax the $NO_X$ emission standards, only the Trona area should be exempt from the 225 ppm maximum. A "Notice of Determination" with reference to the supplemental EIR was filed with the clerk of the board of supervisors.

In August 1979, the board, as the governing body of the Air Pollution Control District, held a hearing on a proposed modification of district rules 474, 475, and 476 (collectively former rule 68) to raise the allowable $NO_X$ emissions from certain facilities in the county. The hearing was continued to September 4, on which date the board approved the rule changes increasing allowable $NO_X$ emissions from 225 ppm to 450 ppm as to facilities constructed or modified before July 1979. As thus qualified, the action only affected the Kerr-McGee facility in Trona. In adopting the rule change, the board determined that "such action is categorically exempt from the application of the California Environmental Quality Act as an action taken for the protection of the environment and of natural resources." The clerk of the board was directed to file a "Notice of Determination" of the board's action.

On September 10, 1979, a "Notice of Determination" was filed with the clerk of the board of supervisors. The notice described the project as

---

[3]Air Pollution Control Districts are required to "adopt and enforce rules and regulations which assure that reasonable provision is made to achieve and maintain the state ambient air quality standards for area under their jurisdiction,..." (Health & Saf. Code, § 40001.)

"changes in rules 474, 475, and 476," and stated that the "County of San Bernardino" has approved the project and has determined that it "will not...have a significant effect on the environment."

Plaintiffs are Local 35 of the International Longshoremen's and Warehousemen's Union and the Desert Protective Council, Inc. Local 35 represents the majority of Kerr-McGee employees at the company's facilities in Trona. The Desert Protective Council, Inc. is a nonprofit corporation organized to safeguard and protect desert areas of the county that are of "unique scenic, scientific, historical, spiritual and recreational value." A representative of Local 35 was present at the board meetings when the rule changes were being considered and adopted and had urged the board to have an EIR prepared on the effect the rule changes would have on the ambient air quality in the area.

Plaintiffs filed the instant proceeding on December 14, 1979, which was 101 days after the board amended the district rules on $NO_x$ emission standards and 95 days after the "Notice of Determination" was filed with the clerk of the board. The matter was heard on the pleadings and documentary evidence. Following submission, the court rendered its decision and order in which it found that plaintiffs' representatives were present at the board meetings when the rule changes were made and had actual knowledge of the actions taken by the board; the board substantially complied with the legal requirements pertaining to the filing of a notice of determination; and plaintiffs had "constructive notice" of the challenged proceedings. Based upon those findings, the court decided that plaintiffs' action was barred by section 21167 either under the 35-day limitation of subdivision (d) or the 30-day limitation of subdivision (b). Findings were not requested and judgment was entered in accordance with the decision and order. Plaintiffs appeal from the judgment.

Plaintiffs contend that the applicable limitation period was 180 days under either subdivision (d) or subdivision (a) of section 21167. They further urge that if we decide that action was timely filed, we address the merits of their petition and hold that the project (amendment to the district rules) was not categorically exempt from the requirements of CEQA. Defendants contend that the trial court properly determined that the action was barred. But they also urge us to consider the merits if we conclude they are incorrect on the statute of limitations issue and contend the judgment should be affirmed on the ground the district had substantially complied with CEQA requirements.

## I

### STATUTE OF LIMITATIONS

■ The governing statute of limitations is to be found in one or more of the subdivisions of section 21167 quoted in the footnote below.[4] The provisions of section 21167 operate as a special statute of limitations for actions and proceedings premised on alleged violations of CEQA. (*Lee* v. *Lost Hills Water Dist.* (1978) 78 Cal.App.3d 630, 633 [144 Cal.Rptr. 510]; *Walters* v. *County of Plumas* (1976) 61 Cal.App. 3d 460, 469 [132 Cal.Rptr. 174].) As can be seen, the limitations period depends upon the nature of the alleged CEQA violation on which the governmental action is being challenged. In substance, subdivision (a) pertains to an action charging the public agency with approving or undertaking a project having a significant effect on the environment without any attempt to comply with CEQA, subdivision (b) pertains to an action alleging that the public agency has improperly determined that the project does not have a significant effect on the environment, subdivision (c) pertains to an action alleging that the EIR fails to comply with the requirements of CEQA, subdivision (d) pertains to an action charging that the public agency has improperly determined that the project is exempt from CEQA, and subdivision (e) is a catchall provision governing an action based on any other failure of the public agency to comply with CEQA.

---

[4]Section 21167 provides: "Any action or proceeding to attack, review, set aside, void, or annul the following acts or decisions of a public agency on the grounds of noncompliance with this division shall be commenced as follows:

"(a) An action or proceeding alleging that a public agency is carrying out or has approved a project which may have a significant effect on the environment without having determined whether the project may have a significant effect on the environment shall be commenced within 180 days of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days after commencement of the project.

"(b) Any action or proceeding alleging that a public agency has improperly determined whether a project may have a significant effect on the environment shall be commenced within 30 days after the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152.

"(c) Any action or proceeding alleging that an environmental impact report does not comply with the provisions of this division shall be commenced within 30 days after the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152 by the lead agency.

"(d) Any action or proceeding alleging that a public agency has improperly determined that a project is not subject to the provisions of this division pursuant to subdivision (b) of Section 21080 or pursuant to Section 21085 or 21172 shall be commenced within 35 days after the filing by the public agency, or person specified in subdivision (b) or (c) of Section 21065, of the notice authorized by subdivision (b) of

█ In the present case, plaintiffs sought annulment of the amendment to the district rules regulating the $NO_X$ emissions on allegations that the board improperly determined that the project was categorically exempt. Plaintiffs, therefore, argue that the statute of limitations for the instant proceeding is the 180-day period prescribed by subdivision (d) or (a) rather than the 35-day limitation of (d), because the board failed to file the notice authorized by subdivision (b) of section 21152.

█ Section 21152 governs the filing by a local agency of a notice of its approval or determination to carry out a project. Subdivision (a) deals with a notice of approval or determination for projects which are subject to CEQA and subdivision (b) with notices for projects which the local agency has determined to be exempt from CEQA. Subdivision (b) reads in pertinent part: "(b) Whenever a local agency determines that a project is not subject to the provisions of this division pursuant to subdivision (b) of Section 21080 or pursuant to section 21085 or 21172, and it approves or determines to carry out such project, it, or the person specified in subdivision (b) or (c) of Section 21065, may file notice of such determination with the county clerk of the county, or counties, in which the project will be located."

The information required to be set forth in a notice filed under subdivision (b) of section 21152, is prescribed by section 15074 of the state EIR guidelines (guidelines) implementing CEQA. (Cal. Admin. Code, tit. 14, § 15074, p. 322.4.) Section 15074 provides in pertinent part: "(a) When a public agency determines that a project is exempt from the requirements of CEQA and the public agency approves or determines to carry out the project, it may file a notice of exemption. Such a notice shall include:

"(1) A brief description of the project,

"(2) A finding that the project is exempt, including a citation to the State Guidelines section under which it is found to be exempt, and

---

Section 21108 or subdivision (b) of Section 21152. If such notice has not been filed, such action or proceeding shall be commenced within 180 days of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days after commencement of the project.

"(e) Any action or proceeding alleging that any other act or omission of a public agency does not comply with the provisions of this division shall be commenced within 30 days after the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152."

"(3) A brief statement of reasons to support the findings."

The trial court determined that the notice filed by the board on September 10, 1979, substantially complied with the statute and guidelines and therefore triggered the 35-day period specified in subdivision (d) of section 21167. Defendants seek to support the court's conclusion on the additional theory that the plaintiffs' actual knowledge of the action taken by the board together with the fact that a notice of determination, however deficient, was filed by the board, justified the invocation of the 35-day statute of limitations.

Plaintiffs maintain that the notice was not in substantial compliance with the notice requirements for a project determined to be exempt from CEQA. We agree. The project description was the only required item of information contained in the notice and even that was of debatable adequacy. The project was described as: "Changes in rules 474, 475, 476." More importantly, the notice failed to state that the project was determined to be exempt, or provide the guidelines citation under which such finding was made, or give a statement of reasons to support a finding of exemption. "Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute. But when there is such actual compliance as to all matters of substance then mere technical imperfections of form ... should not be given the stature of noncompliance ...." (*Stasher* v. *Harger-Haldeman* (1962) 58 Cal.2d 23, 29 [22 Cal.Rptr. 657, 372 P.2d 649]; *Coe* v. *Davidson* (1974) 43 Cal.App.3d 170, 175 [117 Cal.Rptr. 630]; *Desherow* v. *Rhodes* (1969) 1 Cal.App.3d 733, 741 [82 Cal.Rptr. 138], disapproved on other grounds in *Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660 [125 Cal.Rptr. 757, 542 P.2d 1349].) Deficiencies in the notice were not mere matters of technical imperfections; they were matters of substance.

Defendants concede that the board did not, as the notice recited, make a finding that the project would not have a significant effect on the environment. Defendants further concede that if neither plaintiff had been present at the board's proceedings, it would be inappropriate to apply the 35-day limitation period. However, defendants argue that since plaintiffs' representative was at the board meetings, plaintiffs are charged with knowledge that the board had determined that the rule

changes were categorically exempt and therefore cannot complain of the deficiencies in the notice.

The contention lacks merit. The adequacy of a notice to trigger commencement of the short 35-day statute of limitations of section 21167, subdivision (d) should not turn on whether a party had actual knowledge of the board's action. Adoption of such a rule would invite disputes over whether a person was present at the meeting where the action was taken; or, if present, whether he or she heard what went on and understood the nature of the action taken. Moreover, the statute makes the time commence from the date of filing of the notice "authorized by ... subdivision (b) of section 21152"; that is, a notice containing the information required by the implementing regulation. The shortness of the period makes it even more important that the notice which triggers its commencement at least substantially complies with the statute and regulations.

Defendants argue that if we decide that the 35-day period prescribed in subdivision (d) of section 21167 is inapplicable, the action was nevertheless barred by the 30-day provision of subdivision (b). They maintain that the notice filed by the board satisfied the requirements of subdivision (a) of section 21152 because it recited that the project would not have a significant effect upon the environment and because that finding was implicit in the board's determination that the project was categorically exempt from CEQA. This convoluted argument is specious. The board did not undertake an environmental study of the consequences of the rules change nor did it find that the project would not have a significant effect on the environment. It simply determined that the project was categorically exempt from CEQA and as defendants concede, the statement in the notice that the board found that the project did not have a significant effect on the environment was erroneous.

Finally, defendants contend that subdivision (e) must govern. This contention is likewise without merit. Subdivision (e) is a catchall provision for alleged CEQA violations not covered by any of the other subdivisions of section 21167. Since plaintiffs' action came squarely within subdivision (d), subdivision (e) is inapplicable.

We conclude that the governing statute of limitations was the 180-day period under either subdivision (d) or (a) of section 21167 and that the action was timely filed.

## II

### Validity of the Rule Amendment

■ Both parties agree that if we determine that the action was timely, we must consider whether the judgment can be sustained on the merits. Defendants argue that the uncontroverted facts show: (1) The district substantially complied with the requirements of CEQA in that a supplemental EIR prepared in May 1975 adequately analyzed the potential effect of relaxing the $NO_X$ emission standards prescribed by former rule 68 in the event coal was used to fire the Argus boilers, and (2) that the project was not discretionary because the district had committed itself in 1974 and 1978 to amend the rules so that any challenge to the board's action should have been brought at that time. Neither contention is meritorious.

The record fails to show that the board considered the 1975 supplemental EIR when it amended the rules in September 1979. It simply shows that the board determined that the project was exempt from CEQA as an action taken for "the protection of the environment and of natural resources." We find nothing in the record to show that the board determined, either on the basis of the 1975 supplemental EIR or on any other study, that the proposed relaxation of the $NO_X$ emission standards would not have a significant effect on the environment.

The district's contention that the amendment to the rules was not a discretionary project within the meaning of CEQA because the district had by its earlier actions committed itself to the amendment is equally without merit. The previous authorizations provided that Kerr-McGee must comply with the standards of rule 68 but that if it could not do so, utilizing the best available technology, the board would consider requesting modification of the rules. The 1979 amendment was accomplished through the board's rule-making power and as such was a separate and distinct discretionary project within the meaning of CEQA.

The validity of the board's action thus depends upon the correctness of its determination that relaxation of the $NO_X$ emission standards was categorically exempt "as an action taken for the protection of the envi-

ronment and of natural resources." Understandably, defendants have made no attempt to defend an amendment doubling the allowable rate of $NO_X$ emissions "as an action taken for the protection of the environment and of natural resources."

Section 21080, subdivision (b)(10), exempts "[a]ll classes of projects designated pursuant to Section 21084." Section 21084, subdivision (a), provides that the state EIR guidelines shall designate classes of projects which have been determined not to have a significant effect on the environment. The guidelines adopted pursuant to section 21084 include the following:

Section 15107: "Class 7 consists of actions taken by regulatory agencies as authorized by state law or local ordinance to assure the maintenance, restoration, or enhancement of a natural resource where the regulatory process involves procedures for protection of the environment. Examples include but are not limited to wildlife preservation activities of the State Department of Fish and Game. Construction activities are not included in this exemption."

Section 15108: "Class 8 consists of actions taken by regulatory agencies, as authorized by state or local ordinance, to assure the maintenance, restoration, enhancement, or protection of the environment where the regulatory process involves procedures for protection of the environment. Construction activities are not included in this exemption."

The board's action can hardly be characterized as one taken "to assure the maintenance, restoration, or enhancement of a natural resource" or "to assure the maintenance, restoration, enhancement, or protection of the environment." The Legislature has determined that oxides of nitrogen are dangerous substances. (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 808 [114 Cal.Rptr. 577, 523 P.2d 617].) Where there is a reasonable possibility that a project or activity may have a significant effect on the environment, an exemption is improper. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 206 [132 Cal.Rptr. 377, 553 P.2d 537].) Manifestly, there is a reasonable possibility that doubling the $NO_X$ emissions allowed into the atmosphere may have "a significant effect on the environment."

## DISPOSITION

The judgment is reversed with directions to issue a peremptory writ of mandate commanding the board to set aside its amendments to rules 474, 475, and 476 and to conduct further proceedings in conformity with the requirements of CEQA.

Gardner, P. J., and Kaufman, J., concurred.