[Civ. No. 26424. Fourth Dist., Div. One. Mar. 3, 1982.]

CITIZENS OF LAKE MURRAY AREA ASSOCIATION, Plaintiff and Appellant, v.
CITY COUNCIL OF THE CITY OF SAN DIEGO, Defendant and Respondent.

**COUNSEL**

Lawrence Wasserman for Plaintiff and Appellant.

John W. Witt, City Attorney, Ronald L. Johnson, Chief Deputy City Attorney, and Kenneth So, Deputy City Attorney, for Defendant and Respondent.

## OPINION

**WORK, J.**—Citizens of Lake Murray Area Association (Association) appeal a judgment dismissing its petition for a peremptory writ of mandate, entered following the sustaining of the San Diego City Council's (Council) demurrer to the petition and the Association's election to stand on its pleadings. The sole issue presented is whether compliance by the county clerk with the statutory duty of posting notices of determination of environmental actions taken by a public agency under the California Environmental Quality Act (CEQA)[1] is mandatory in order for the special statute of limitations within the act to commence running? We answer in the affirmative and reverse the judgment.

### Factual and Procedural Background

On October 6, 1981, the Association petitioned for a peremptory writ of mandate alleging the Council abused its discretion in determining a proposed project would not significantly affect the environment. The Council demurred, asserting the special statute of limitations within CEQA for initiating judicial review of environmental decisions. The trial court sustained the demurrer with 20 days leave to amend. On November 3, 1981, the judgment of dismissal was filed, as the Association elected to stand on the petition as filed.

The parties' agreed statement of facts is as follows: "On July 16, 1981 City Council caused a notice of determination of adoption of the Negative Declaration to be filed with the County Clerk of San Diego County. Said County Clerk has neglected and failed to post a list containing said notice of determination as required by the provisions of Public Resources Code Section 21152(c)."[2]

### Discussion

"The provisions of section 21167 operate as a special statute of limitations for actions and proceedings premised on alleged violations of CEQA." (*International Longshoremen's & Warehousemen's Union v.*

---

[1]CEQA is contained in Public Resources Code section 21000 et seq. All statutory references are to the Public Resources Code.

[2]Because the parties have narrowly circumscribed the single issue on this appeal, we consider their agreed facts as if no plaintiff had received actual notice, and the trial court deemed the commencement of the period of limitations triggered only by presumptive or constructive notice.

*Board of Supervisors* (1981) 116 Cal.App.3d 265, 271 [171 Cal.Rptr. 875]; *Lee* v. *Lost Hills Water Dist.* (1978) 78 Cal.App.3d 630, 633 [144 Cal.Rptr. 510].) Section 21167, subdivision (b), provides: "Any action or proceeding to attack, review, set aside, void or annul the following acts or decisions of a public agency on the grounds of noncompliance with this division shall be commenced as follows:

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"(b) Any action or proceeding alleging that a public agency has improperly determined whether a project may have a significant effect on the environment shall be commenced within 30 days after the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152." Thus incorporated, subdivision (a) of section 21152 reads: "Whenever a local agency approves or determines to carry out a project which is subject to the provisions of this division, it shall file notice of such approval or such determination with the county clerk of the county, or counties, in which the project will be located. Such notice shall indicate the determination of the local agency whether the project will, or will not, have a significant effect on the environment and shall indicate whether an environmental impact report has been prepared pursuant to the provisions of this division."

Facially, it appears the express language of sections 21152, subdivision (a), and 21167, subdivision (b), declares the mere filing of the notice of determination with the county clerk commences the 30-day period of limitations. (Cal. Admin. Code, tit. 14, § 15083, subd. (f)(5), p. 322.11.) However, the Association urges that the 30-day period should not commence until the notice is posted pursuant to section 21152, subdivision (c). Subdivision (c) provides: "All notices filed pursuant to this section shall be available for public inspection, and a list of such notices shall be posted on a weekly basis in the office of the county clerk. Each such list shall remain posted for a period of 30 days."

We apply the following fundamental rules of statutory construction: First, "a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] ... 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose ...[,]' [citation; as] 'a construction making some words surplusage is to be avoided.' [Citation.] 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they ap-

pear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224].)

"[T]he Legislature intended ... [CEQA] to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal. Rptr. 761, 502 P.2d 1049].) One of the basic purposes of CEQA is to "[i]nform governmental decision makers *and the public* about the potential, significant environmental effects of proposed activities." (Cal. Admin. Code, tit. 14, § 15006, subd. (1), p. 291, italics added.) Indeed, "CEQA broadly invokes the policy of permitting full public participation throughout the environmental review process it commands." (*Plaggmier* v. *City of San Jose* (1980) 101 Cal.App.3d 842, 854 [161 Cal.Rptr. 886]; see, § 21000, subd. (e); § 21003, subd. (b).) Just as the EIR is considered the "heart" of CEQA, being the principal method for bringing environmental data to the attention of the agency and the public (*No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 84 [118 Cal.Rptr. 34, 529 P.2d 66]), the negative declaration constitutes an integral part of the act. "CEQA effectively imposes upon every 'public agency' a duty to disapprove a project, if it will have significant effects on the environment as proposed, unless and until the agency has considered 'feasible alternatives or feasible mitigation measures which will avoid or substantially lessen such significant effects.' (§ 21002.) The agency's decision to prepare an EIR invokes the duty. (See §§ 21002.1, 21061.) The adoption of a negative declaration operates to dispense with the duty because it is a decision that the proposed project will not affect the environment at all. (See § 21064.) Its terminal effect on the environmental review process means that it is vitally important to the purpose of CEQA. (See *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68, 80-81, 85-86 [118 Cal.Rptr. 34, 529 P.2d 66]; Comment, *Environmental Decision Making Under CEQA: A Quest For Uniformity* (1977) 24 UCLA L.Rev. 838, 857-866.) *The opportunities to protest it, and to be heard before its finality, are consequently important to that purpose as well.*" (*Plaggmier* v. *City of San Jose, supra,* 101 Cal.App.3d 842, 853; italics added.)

In order to further the noted underlying purposes of CEQA, we conclude the 30-day period does not start running until the day the no-

tice is posted in the office of the county clerk. Subdivision (c) of section 21152 employs the term "shall," which is statutorily defined as mandatory in its construction except where "the context otherwise requires." (§§ 5, 15.) As part of section 21152 and in conjunction with section 21167, subdivision (b), the subdivision, in essence, constitutes a constructive notice statute designed to limit the appellate rights of those who seek to challenge the propriety of the governmental action by alleging that the public agency improperly determined the project has no significant effect on the environment. The potentiality of the period of limitation running, absent even constructive notice because of the county clerk's failure to perform his/her mandatory duty to post the notice, runs contrary to the legislative intent to encourage public participation and to afford the fullest possible protection to the environment. Further, it offends not only the basic notion of fair play, but also the basic tenets of due process. (But see *Lee* v. *Lost Hills Water Dist., supra,* 78 Cal. App.3d 630, 634.) The requirement of subdivision (c) that notice remain posted for 30 days, equal in time to the prescribed limitation period, lends additional support to our statutory construction. Indeed, if we were to hold to the contrary, there would be no purpose to retain the evident legislative function of subdivision (c).

### *Disposition*

The judgment is reversed.

Wiener, J., concurred.

**COLOGNE, Acting P. J.**—I concur in the result, and would reverse the judgment of dismissal with leave to answer.

I believe the statute of limitations is clearly spelled out in Public Resources Code section 21167, subdivision (b). I read the section as encompassing the requisites of the statute's running, i.e., the filing of the notice required in this instance by subdivision (a) of section 21152.

Notice of council action, however, is fundamental to the rights of the parties in actions of this nature (see *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 257 [104 Cal.Rptr. 761, 502 P.2d 1049]). Public Resources Code section 21152, subdivision (c), provides a means of giving constructive notice of the action taken by the council and is an essential element of public participation in the council's determination. The failure to observe the obligations to be performed should

not prejudice the interested parties. I believe the failure to post notice should estop the city from raising the statute of limitations or any other defense that proper notice might have cured unless the petitioners had actual notice. In that case, the failure to give constructive notice by posting would not be prejudicial and would have no effect on the running of the statute. The council should be afforded the opportunity to demonstrate there was actual notice and the limitations period had run.