[No. B084971. Second Dist., Div. Six. Aug. 15, 1995.]

GOLETA UNION SCHOOL DISTRICT, Plaintiff and Appellant, v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant and Respondent.

COUNSEL

Fekete, Carton, Hartsell, Grass, Peters, Inman & Herndon, Frank J. Fekete and Stephen L. Hartsell for Plaintiff and Appellant.

James E. Holst, Gary Morrison, Christine Helwick, David M. Birnbaum, Eric K. Behrens, Pillsbury, Madison & Sutro, Ronald E. Van Buskirk, Carole V. White and David S. Winton for Defendant and Respondent.

## OPINION

**GILBERT, J.**—A long-range development plan for a university projects increased enrollment in a local elementary school district. A supplemental environmental impact report (SEIR) describes impacts of the plan. It proposes options which include building classrooms to accommodate additional students. Must the SEIR commit the university to provide funds to the district to build classrooms? No.

The Goleta Union School District (District) appeals from the judgment of the trial court which ruled that the SEIR prepared by respondent, the Regents of the University of California (Regents), for its 1990 Long Range Development Plan (the Plan) complies with the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000 et seq.) Because the SEIR provides all the information required by CEQA, we affirm.

### FACTS

In 1990, Regents adopted a Plan to expand the University of California at Santa Barbara (UCSB) over a 15-year period. The District's schools serve the area encompassed by UCSB. The District objected to the initial EIR for the Plan because it failed to provide relevant information and mitigation measures regarding significant environmental impacts the Plan might have on enrollment in the District's schools.

In 1992, the trial court found evidence in the record of severe overcrowding of the District's classrooms which it believed would eventually necessitate construction of new classroom facilities or additional busing of students. Because the initial EIR failed to consider such impacts, the trial court determined that it violated CEQA. The trial court issued a writ of mandate to compel Regents to prepare a SEIR to gather and consider information on significant physical impacts and to propose mitigation measures for them.

In March 1993, Regents filed its return to the writ. In May 1993, the District objected to the return as being incomplete. The SEIR states that if the planned expansion of UCSB is fully completed, its cumulative effect would involve an increase of 192 new students in the District. It estimated

that there would be a cumulative shortfall of 172 spaces at the Isla Vista School if the Plan is fully realized.

The SEIR describes options to accommodate the shortfall. They include redistributing students to other facilities, beginning year-round schools, increasing the use of portable classrooms and building permanent new classroom facilities. The SEIR also states that mitigation of the physical environmental impacts associated with these options is the responsibility of the District, but that Regents agree to contribute a fair share to the cost of such mitigation.

The District argued that Regents were required to make a financial commitment in the SEIR to defray the costs of building permanent classrooms. Building such classrooms is the most expensive option discussed in the SEIR. It is estimated to cost $1.6 million. The District has not formally committed itself by binding board action to any option specified in the SEIR. It is uncertain how much of Regent's Plan will come to fruition. Regents asserted that it fully satisfied the requirements of CEQA by identifying and considering the physical impacts of the Plan on the District and by providing a spectrum of options and mitigation measures for such impacts.

The trial court overruled the objections of the District and determined that the SEIR was in compliance with its writ and CEQA. It discharged the writ and the District appealed.

### Discussion

On appeal, the District maintains that Regents failed to recognize that classroom overcrowding is a significant environmental impact, failed to propose adequate mitigation measures, failed to make any of the findings required by Public Resources Code section 21081 as to classroom overcrowding and failed to mitigate overcrowding.

Regents maintain it has no obligation under CEQA to alleviate increased classroom enrollment, per se, although it has agreed to pay its fair share of environmental impacts resulting from the Plan. Regents assert that increased classroom enrollment, in itself, is a socio-economic concern and not a physical environmental impact subject to CEQA. The SEIR complied with CEQA because it identified and analyzed the environmental impacts which could result from future District actions to accommodate increased elementary school enrollment, and because it proposed mitigation measures to deal with such decisions.

Usually ". . . a public agency must prepare an EIR whenever substantial evidence supports a fair argument that a proposed project 'may have

a significant effect on the environment.' [Citations.]" (*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1993) 6 Cal.4th 1112, 1123 [26 Cal.Rptr.2d 231, 864 P.2d 502].) An EIR is an informational document which provides detailed information to the public and to responsible officials about significant environmental effects of a proposed project. (*Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 391-392 [253 Cal.Rptr. 426, 764 P.2d 278]; *Laurel Heights Improvement Assn.* v. *Regents of University of California, supra,* 6 Cal.4th at p. 1123.) It must contain substantial evidence on those effects and a reasonable range of alternatives, but the decision whether or not to approve a project is up to the agency. (*Citizens of Goleta Valley* v. *Board of Supervisors* (1990) 52 Cal.3d 553, 576 [276 Cal.Rptr. 410, 801 P.2d 1161]; *Carmel Valley View, Ltd.* v. *Board of Supervisors* (1976) 58 Cal.App.3d 817, 822 [130 Cal.Rptr. 249].)

■ We do not conduct an independent review of the EIR. We consider whether the agency has abused its discretion by failing to proceed in the manner required by law, and we determine whether substantial evidence in the light of the whole record supports the agency's decision. (Pub. Resources Code, §§ 21168; 21168.5; *Laurel Heights Improvement Assn.* v. *Regents of University of California, supra,* 47 Cal.3d at p. 392, fn. 5; Cal. Code Regs., tit. 14, § 15384, subd. (a), hereafter "Guidelines."[1])

We resolve reasonable doubts in favor of the administrative finding and decision. If the agency proceeds according to CEQA and includes the information on the environment it requires, the agency does not violate CEQA. The final decision on the merits of a project is within the hands of the agency. (*Citizens of Goleta Valley* v. *Board of Supervisors, supra,* 52 Cal.3d at p. 576; *Rural Landowners Assn.* v. *City Council* (1983) 143 Cal.App.3d 1013, 1021 [192 Cal.Rptr. 325].)

A "project" under CEQA means an activity that may cause either *a direct physical change or a "reasonably foreseeable indirect physical change"* in the environment. (Pub. Resources Code, § 21065, italics added.) Public Resources Code section 21060.5 defines the environment as the physical conditions within an area. "Economic or social effects of a project shall not be treated as significant effects on the environment. An EIR *may* trace a chain of cause and effect from a proposed decision on a project through

---

[1]All references to the "Guidelines" are to the state CEQA Guidelines which implement CEQA at California Code of Regulations, title 14, section 15000 et seq. Courts afford great weight to the Guidelines, except when its provisions are clearly unauthorized or are erroneous under the statutory provisions of CEQA. (See *Laurel Heights Improvement Assn.* v. *Regents of University of California, supra,* 6 Cal.4th at p. 1123, fn. 4.)

anticipated economic or social changes resulting from the project to physical changes caused in turn by the economic or social changes. The *intermediate economic or social changes need not be analyzed in any detail greater than necessary* to trace the chain of cause and effect. *The focus of the analysis shall be on the physical changes.*" (Guidelines, § 15131, subd. (a), italics added.)

Section 15382 of the CEQA Guidelines states, in pertinent part, that a " '[s]ignificant effect on the environment' means a substantial, or potentially substantial, adverse change *in any of the physical conditions* within the area affected by the project including land, air, water, minerals, flora, fauna . . . . *An economic or social change by itself shall not be considered a significant effect on the environment. A social or economic change related to a physical change may be considered in determining whether the physical change is significant.*" (Italics added; see also Guidelines, §§ 15002, subd. (g), 15131, and 15358, subd. (a)(2); *Marin Mun. Water Dist. v. KG Land California Corp.* (1991) 235 Cal.App.3d 1652, 1661-1662 [1 Cal.Rptr.2d 767].)

The District argues that Regents must consider classroom overcrowding, per se, as a significant effect on the environment and to commit funds for permanent classrooms on the basis of subdivision (w) of appendix G to the Guidelines.

Subdivision (w) states, in pertinent part, that "[a] project will normally have a significant effect on the environment if it will: . . . [¶] (w) [c]onflict with established . . . educational . . . uses of the area[.]" (Guidelines, § 15387.)

Such a conflict would occur within the meaning of CEQA only if physical changes are wrought by the Plan. (Pub. Resources Code, §§ 21060.5, 21100, subd. (d), 21082.2, subd. (c); and see Guidelines, § 15358, subd. (b) [effects analyzed under CEQA must be related to a physical change]; *Citizen Action to Serve All Students v. Thornley* (1990) 222 Cal.App.3d 748, 758-759 [272 Cal.Rptr. 83]; *Marin Mun. Water Dist. v. KG Land California Corp.*, *supra*, 235 Cal.App.3d at p. 1661; *San Franciscans for Reasonable Growth v. City and County of San Francisco* (1989) 209 Cal.App.3d 1502, 1516 [258 Cal.Rptr. 267].)

The District opines that Guidelines, section 15064, subdivision (f) establishes that classroom overcrowding constitutes a significant effect on the environment and mandates that Regents provide the funding it seeks.

Guidelines, section 15064, subdivision (f) states, in pertinent part, that "[e]conomic and social changes resulting from a project shall not be treated

as significant effects on the environment. . . . Where a physical change is caused by economic or social effects of a project, the physical change may be regarded as a significant effect . . . . Alternatively, economic and social effects of a physical change may be used to determine that the physical change is a significant effect . . . . If the physical change causes adverse economic or social effects on people, those adverse effects may be used as the basis for determining that the physical change is significant. For example, if a project would cause overcrowding of a public facility and the overcrowding causes an adverse effect on people, the overcrowding would be regarded as a significant effect."

The Guideline merely points out that in some cases socio-economic effects may cause physical changes that significantly affect the environment. An example might be a fivefold increase in student enrollment. Such a large increase would likely necessitate the construction of additional classrooms. That is not the case here. Moreover, classroom overcrowding, per se, does not constitute a significant effect on the environment under CEQA. (Pub. Resources Code, §§ 21060.5, 21065, 21100, subd. (d); see *El Dorado Union High School Dist.* v. *City of Placerville* (1983) 144 Cal.App.3d 123, 131 [192 Cal.Rptr. 480]; *Citizen Action to Serve All Students* v. *Thornley, supra,* 222 Cal.App.3d at pp. 758-759; *Marin Mun. Water Dist.* v. *KG Land California Corp., supra,* 235 Cal.App.3d at p. 1661.)

The SEIR was required here only because the trial court believed the project would ultimately require physical changes in the environment such as construction of new school facilities, new bus schedules and changed traffic patterns. (See *Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779 [187 Cal.Rptr. 398, 654 P.2d 168], which concerned a proposal for unification of a school district that was subject to future election. An initial threshold study was required because the unification might ultimately involve construction of a new high school. *Fullerton* was criticized on other grounds in *Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903, 917-919 [13 Cal.Rptr.2d 245, 838 P.2d 1198]; see also *El Dorado Union High School Dist.* v. *City of Placerville, supra,* 144 Cal.App.3d at page 131 [although increased student enrollment and potential for overcrowding might not implicate CEQA per se, evidence of present overcrowding and projections of increasing enrollments which would likely necessitate constructing a new school, changing bus routes and altering traffic patterns is sufficient to require an EIR].)

The District opines that the findings in the SEIR are inadequate. Public Resources Code section 21081, subdivision (a) requires findings only for

significant environmental effects. Because the projected increases in student enrollment here do not in themselves constitute a significant physical impact on the environment, no findings were required in the SEIR to show that the Plan alleviates increased enrollment. Similarly, Regents had no responsibility to tell the District what it should do to increase capacity. (See Pub. Resources Code, § 21081, subd. (b).)

The SEIR provides information concerning potential physical impacts which may result from implementing the Plan. It states that if new school facilities or busing is required as a result of implementation of the Plan, the Plan could result in physical impacts on the environment which would require mitigation. It discusses a variety of mitigation measures for these possible impacts as required by CEQA.

The District is unhappy with the means Regents propose to resolve problems that may arise from the Plan. ■ "CEQA establishes no categorical legal imperative as to the scope of alternatives to be analyzed in an EIR. Each case must be evaluated on its facts, which in turn must be reviewed in light of the statutory purpose." (*Citizens of Goleta Valley* v. *Board of Supervisors, supra*, 52 Cal.3d at p. 566.) The scope of alternatives discussed in an EIR must be judged against the rule of reason. (*Id.* at p. 565.) ■ Regents properly set forth a wide range of alternatives to alleviate the effect of increased student enrollment in the District's elementary schools. These alternatives include increasing class sizes, instituting year-round schools, adding portable classrooms and building new classrooms.

The District opines that under *Murrieta Valley Unified School Dist.* v. *County of Riverside* (1991) 228 Cal.App.3d 1212 [279 Cal.Rptr. 421], Regents may be required under CEQA to commit funds in the SEIR to mitigate the potential effects of overcrowding. We disagree. In *Murrieta*, a school district challenged the failure of a county to state and consider mitigation measures under CEQA for impacts that a general plan amendment would have on its school facilities. The county had taken the position that it could not impose any mitigation measures under CEQA; that it could only impose developer fees under Government Code sections 65995 and 65996 because the state preempted the field of school facilities financing.

The *Murrieta* court concluded, inter alia, that although the state preempted the field of school facilities financing by local agencies, the county could consider mitigation measures other than developer fees, under CEQA. (*Murrieta Valley Unified School Dist.* v. *County of Riverside, supra*, 228 Cal.App.3d at pp. 1234-1235; see Gov. Code, § 65995, subds. (a) and (e).)

The conclusion of the *Murrieta* court does not assist the District here. We may not require Regents to make a particular decision on how to mitigate the potential physical effects of its Plan. The purpose of the SEIR is to provide information. Therefore, we may only require a lead agency to inform the public and responsible officials about the impacts which a project may have on the physical environment and the ways in which those impacts may be mitigated.

Unlike *Murrieta*, the instant SEIR provides a range of possible mitigation measures related to potential physical impacts of the Plan. It also contains a statement of overriding considerations supported by substantial evidence which supports its decision. Although it was not incumbent upon Regents to do so, the SEIR committed Regents to provide its fair share of the costs of mitigation which may be required as a result of carrying out the Plan. (Cf. *Murrieta Valley Unified School Dist.* v. *County of Riverside, supra,* 228 Cal.App.3d at pp. 1234-1235.)

The SEIR provided the information required by CEQA so that the community will be aware of possible environmental effects of the Plan. Whether or not the proposed long-range Plan will ever be completely carried out remains to be seen. Even if the Plan is carried out and the projected increase in student enrollment occurs, it remains uncertain what changes the District might decide to make as a result. It is possible that no physical effects on the environment will occur. (See *Marin Mun. Water Dist.* v. *KG Land California Corp., supra,* 235 Cal.App.3d at pp. 1662-1663.)

The District may wish that Regents provide funding for permanent state-of-the-art classrooms, but CEQA does not require Regents to do so.

The judgment is affirmed. Costs to respondent.

Stone (S. J.), P. J., and Yegan, J., concurred.