Filed 1/17/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DELIA GUERRERO et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CITY OF LOS ANGELES, <br><br> Defendant and Appellant; <br><br> TTLC LOS ANGELES – EL SERENO LLC et al., <br><br> Real Parties in Interest and Appellants. | B326033 c/w B327032 <br><br> (Los Angeles County Super. Ct. No. 21STCP02307) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge. Reversed and remanded with directions.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, John W. Heath, Sr., and Terry Kaufman Macias Assistant City Attorneys, Kathryn Phelan and Marvin Bonilla Deputy City Attorneys; Downey Brand and Andrew Skanchy for Defendant and Appellant.

Sheppard, Mullin, Richter & Hampton, Todd E. Lundell and T. Brooke Miller, for Real Parties in Interest and Appellants.

Carstens, Black & Minteer, Amy C. Minteer, Michelle N. Black and Sunjana Supekar for Plaintiffs and Respondents.

———————————

**INTRODUCTION**

Plaintiffs and respondents Delia Guerrero and Coyotl + Macehualli Citizens (Objectors) filed a petition for writ of mandate, alleging that the decision by the City of Los Angeles (the City) to approve a real estate development project planned by real parties in interest TTLC Los Angeles – El Sereno, LLC and The True Life Companies, LLC (Applicants) violated the California Environmental Quality Act (CEQA), Public Resources Code section 21000 et seq.[1]  The City and Applicants (collectively, Appellants) unsuccessfully demurred, arguing the petition was untimely.  The trial court granted Objectors' petition, directing the City to vacate project approvals and prepare an environmental impact report (EIR) evaluating the environmental impacts of the project.

Appellants contend the Objectors' CEQA claims are barred by the statute of limitations.  Alternatively, they contend that there is no substantial evidence of a fair argument that the project may have a significant environmental impact.  We agree that the petition was untimely, and accordingly, we reverse and remand with directions to dismiss the petition.

---

[1] All further undesignated statutory references are to the Public Resources Code.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Project Development and Approval

This appeal concerns a private development project to subdivide a 218,270 square foot parcel of hillside real estate in Northeast Los Angeles and build 42 single-family homes (the Project). As initially proposed, the Project required removal of 68 protected black walnut trees. When the City conducted an initial study, it determined that the Project did not require an environmental impact report (EIR) under CEQA, and instead prepared a mitigated negative declaration (MND) in June 2016.[2]

Applicants later redesigned the Project to change the lot sizes, rearrange the proposed locations of homes, and address tree removal and replacement. As redesigned, the Project would require zoning changes due to the proposed lot sizes and locations, as well as approvals for retaining walls of varying heights. The City updated the MND in March 2017 to reflect the

---

[2] "Mitigated negative declaration" means a negative declaration prepared for a project when the initial study has identified potentially significant effects on the environment, but (1) revisions in the project plans or proposals made by, or agreed to by, the applicant before the proposed negative declaration and initial study are released for public review would avoid the effects or mitigate the effects to a point where clearly no significant effect on the environment would occur, and (2) there is no substantial evidence in light of the whole record before the public agency that the project, as revised, may have a significant effect on the environment. (Cal. Code Regs., tit. 14, § § 15369.5.)

changes to the Project.[3]  The City's approval of the Project then proceeded in three stages.

*Stage 1:  The Planning Department Approves a Vesting Tentative Tract Map and Adopts the MND*

After a January 23, 2020 noticed public hearing, the Department of City Planning (Planning Department),[4] on March 3, 2020, approved a vesting tentative tract map and adopted the MND that had been prepared in March 2017 for the Project.  A 30-page determination letter summarized the numerous conditions applicable to the Project.[5]  Among other

---

[3] A list of the discretionary approvals included in the MND identifies two additional approvals not relevant to our discussion: issuance of a tree removal permit and approval of a haul route to remove 78,000 cubic yards of soil.

[4] The Planning Department was acting in its capacity as the Deputy Advisory Agency under the Subdivision Map Act. (See *Coalition for an Equitable Westlake/MacArthur Park v. City of Los Angeles* (2020) 47 Cal.App.5th 368, 374, fn. 4 (*CEWM*).)

[5] The letter began by stating, "In accordance with the provisions of CEQA Guidelines Section 15074(b), the [Planning Department] found that after consideration of the whole of the administrative record, including the [MND], and all comments received, with the imposition of mitigation measures, there is no substantial evidence that the project will have a significant effect on the environment; found that the MND reflects the independent [judgment] and analysis of the City; found that the mitigation measures have been made enforceable conditions on

4

things, the letter required execution of a covenant and agreement binding Applicants and all successors to various obligations, including restrictions on haul routes and specifics relating to tree removal and replacement. It also described conditions for issuing a grading or building permit or recording a final map, including demonstrating that no zoning code violations exist. On March 25, 2020, the City filed a Notice of Determination (NOD), which stated that the Planning Department adopted the MND and a mitigation monitoring program, and approved the vesting tentative tract map.

*Stage 2: The Area's Planning Commission Authorizes Retaining Walls and Recommends Approval of the Proposed Zone Change*

At a May 13, 2020 noticed public hearing held virtually, the East Los Angeles Area Planning Commission (Planning Commission) adopted the previously-prepared MND,[6] and made

---

the project; and adopted the MND and the Mitigation Monitoring Program prepared for the MND."

[6] The letter of determination states the Planning Commission found "pursuant to CEQA Guidelines Section 15074(b), after consideration of the whole of the administrative record, including the [MND], and all comments received, with the imposition of the mitigation measures, there is no substantial evidence that the project will have a significant effect on the environment; Found the [MND] reflects the independent judgment and analysis of the City; Found the mitigation measures have been made enforceable conditions on the project;

zoning determinations and adjustments necessary for the Applicant to construct retaining walls and use varying wall heights.[7]  The Planning Commission also approved and recommended that the City Council adopt the zone change needed for the Project.  A letter of determination summarizing these actions was mailed on January 14, 2021, and an NOD was filed on February 4, 2021.

*Stage 3:  City Council Approves the Zone Change*

On June 8, 2021, the City adopted the zone change as recommended by the Planning Commission, as well as the previously prepared MND.[8]  An NOD was filed on June 18, 2021.

---

and Adopted the [MND] and the Mitigation Monitoring Program prepared for the [MND]."

[7] The Planning Commission acted in its capacity as a Zoning Administrator and a Board of Zoning Adjustment under Los Angeles Municipal Code sections 12.24, 12.26, and 12.28, and Government Code sections 65900 et seq.

[8] The City Council Agenda item stated that the council would "FIND, pursuant to CEQA Guidelines Section 15074(b), after consideration of the whole of the administrative record, including the MND . . ., and all comments received, with the imposition of the mitigation measures, there is no substantial evidence that the project will have a significant effect on the environment; FIND that the MND reflects the independent judgment and analysis of the City; FIND that the mitigation measures have been made enforceable conditions on the project; and, ADOPT the MND and the MMP prepared for the MND."

6

## B.        The Objectors' Petition for Writ of Mandate

On July 16, 2021, the Objectors filed a petition for writ of mandate, followed by a first amended petition filed on August 13, 2021.  The first amended petition alleged violations of CEQA, the Planning and Zoning Law (Gov. Code, § 65000, et seq.), and the Subdivision Map Act (Gov. Code, § 66410, et seq.).  Appellants filed a joint demurrer to the petition, which the Objectors opposed.

On March 1, 2022, the trial court sustained the demurrers to the causes of action for violations of the Planning and Zoning Law and the Subdivision Map Act, but overruled the demurrer to the CEQA cause of action, reasoning that the petition was timely because it was filed within thirty days of the June 18, 2021 NOD.  After trial, the court concluded the Project as approved may have significant environmental impacts that were not mitigated by the MND, and again rejected the argument that the Objectors' CEQA claim was barred by the statute of limitations.  The court issued a peremptory writ of mandate vacating the City's various approvals: the adoption of the MND and the mitigation monitoring program; the actions relating to retaining walls and wall heights; and the zone change.  The court ordered all Project activity to stop until additional approvals were granted based on a legally adequate EIR.  The City and Applicants timely appealed the court's decision and the final writ of mandate and judgment.[9]

---

[9] This court ordered the two appeals consolidated.  We construe the consolidated appeals as a single appeal from a final judgment.  (See *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 583.)

**DISCUSSION**

## A. Applicable Law and Standard of Review

*CEQA Overview*

CEQA is designed " 'to "[e]nsure that the long-term protection of the environment shall be the guiding criterion in public decisions." ' " (*Friends of College of San Mateo Gardens v. San Mateo County Community College Dist.* (2016) 1 Cal.5th 937, 944 (*College of San Mateo*), quoting *No Oil, Inc. v. City of Los Angeles* (1974) 13 Cal.3d 68, 74.) "CEQA was enacted to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, those impacts; (3) require project changes through alternatives or mitigation measures when feasible; and (4) disclose the government's rationale for approving a project." (*Protecting Our Water & Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 487 (*POWER*), citing *California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382.)

"To implement these goals, CEQA requires state and local government agencies to first determine whether a proposed activity is a project subject to CEQA, and then to determine whether the project is exempt from CEQA or requires some form of a CEQA document, whether that be an EIR, a negative declaration, or an MND." (*CEWM, supra*, 47 Cal.App.5th at pp. 376–377 [reviewing definitions of different CEQA documents].)

8

CEQA operates, not by dictating pro-environmental outcomes, but rather by mandating that "decision makers and the public" study the likely environmental effects of contemplated government actions and thus make fully informed decisions regarding those actions. (*Neighbors for Smart Rail v. Exposition Metro Line Construction Authority* (2013) 57 Cal.4th 439, 447; Cal. Code Regs., tit. 14, § 15002, subd. (a)(1) [a "basic purpose[ ] of CEQA [is] to . . . [¶] (1) [i]nform governmental decision makers and the public about the potential, significant environmental effects of proposed activities"].)[10] Since CEQA was first enacted, the California Supreme Court has "held that 'the Legislature intended . . . [C]EQA to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.' [Citation.]" *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1184.)

*CEQA Statute of Limitations*

Once a public agency has approved a project after considering its environmental effects, CEQA allows for judicial review of the agency's compliance with CEQA. (§ 21167.) An untimely filed challenge is to be dismissed. (Guidelines, § 15112, subd. (b); *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 499 (*Stockton*).)

---

[10] The administrative regulations implementing CEQA appear in title 14, division 6, chapter 3 of the California Code of Regulations, and will be referred to as the "CEQA Guidelines." (*POWER, supra*, 10 Cal.5th at p. 488, fn. 3.)

"CEQA specifically requires that any lawsuit alleging CEQA noncompliance must be filed within 30 days after a facially valid NOD is filed." (*CEWM, supra*, 47 Cal.App.5th at p. 378; *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 50 (*Green Foothills*); § 21167, subds. (b), (c), & (e).) If the agency determines that a project is exempt from CEQA's requirements and files a notice of exemption (NOE), the applicable statute of limitations is 35 days. (§§ 21108, subd. (b); 21152, subd. (b); § 21167, subd. (d); *Green Foothills, supra*, 48 Cal.4th at p. 47.) If the agency does not file an NOD or NOE, or if the relevant notice is invalid, then a petitioner has 180 days from project approval to file a lawsuit. (§ 21167, subd. (a); *Green Foothills*, at p. 47.)

We review de novo the question of whether Objectors' petition is barred by the statute of limitations. (*Ventura Foothill Neighbors v. County of Ventura* (2014) 232 Cal.App.4th 429, 434.)

## B. <u>Analysis</u>

We agree with Appellants that the trial court erred when it found Objectors timely filed their petition under section 21667. Objectors' petition was filed on July 16, 2021, more than a year after the City's March 25, 2020 NOD triggered the statute of limitations to challenge CEQA compliance. As we explain below, even though the City's approval of the vesting tentative tract map in March 2020 was conditioned on later discretionary approvals, it still constituted project approval under CEQA. The March 25, 2020 NOD triggered the statute of limitations on challenges to the adequacy of the MND, and any CEQA challenge filed more than 30 days later was untimely.

We are unpersuaded by the Objectors' argument that their petition was timely based on the June 18, 2021 NOD filed after the City approved the zone changes necessary to vest the Applicants' rights under the Subdivision Map Act. The Objectors' argument is flawed for several reasons. First, it ignores that CEQA requires a public agency to conduct environmental review of a proposed project as early as feasible in the land use planning process. Second, Objectors' argument does not take into account that for projects falling under CEQA that are subject to multiple discretionary approvals, it is the first approval that triggers the running of the statute of limitations, and later approvals do not restart the statute of limitations clock. Third, Objectors ignore the role of a notice of decision in triggering the statute of limitations for a party to challenge an agency's CEQA compliance. Fourth, with respect to the Project at issue, Objectors fail to identify any material changes to the Project that arguably could have triggered a new statute of limitations on the City's responsibility to prepare a subsequent or supplemental EIR. Considering all of these factors, there is no basis in law to support the trial court's determination that the Objectors' petition timely challenged the adequacy of the MND under CEQA.

*Environmental Review at Earliest Opportunity*

"CEQA Guidelines call for CEQA review at an early stage in any process that will lead to an impact on the environment. Environmental documents (environmental impact reports or negative declarations) 'should be prepared as early as feasible in the planning process to enable environmental considerations to

11

influence project program and design.' ([CEQA Guidelines], § 15004, subd. (b).) Without first carrying out CEQA review, agencies must not 'take any action which gives impetus to a planned or foreseeable project in a manner that forecloses alternatives or mitigation measures that would ordinarily be part of CEQA review.' ([CEQA Guidelines], § 15004, subd. (b)(2)(B).)" (*Friends of the Sierra Railroad v. Tuolumne Park & Recreation Dist.* (2007) 147 Cal.App.4th 643, 654.) "At the same time, CEQA review is premature if the agency action in question occurs too early in the planning process to allow meaningful analysis of potential impacts. Although environmental review must take place as early as is feasible, it also must be 'late enough to provide meaningful information for environmental assessment.' ([CEQA Guidelines], § 15004, subd. (b).)" (*Ibid.*)

Rather than drawing any distinctions between different types of possible agency actions granting approval for a proposed project, CEQA focuses instead on the discretionary nature of such an approval. CEQA's environmental review requirements "apply to discretionary projects proposed to be carried out or approved by public agencies, including, but not limited to, the enactment and amendment of zoning ordinances, the issuance of zoning variances, the issuance of conditional use permits, and *the approval of tentative subdivision maps* unless the project is exempt from [CEQA]." (§ 21080, subd. (a), italics added.)

The mere possibility that a project may change as it moves through the planning process does not preclude applying CEQA's environmental review requirements at the early stages of project review. The California Supreme Court has "rejected the argument that approval of a private project for CEQA purposes was limited to an *unconditional* agreement by the agency which

12

*irrevocably* vested development rights."  (*Van de Kamps Coalition v. Board of Trustees of Los Angeles Community College Dist.* (2012) 206 Cal.App.4th 1036, 1046–1047, italics added, citing *Save Tara v. City of West Hollywood* (2008) 45 Cal.4th 116, 134 (*Save Tara*).)  Instead, environmental review must be conducted before, "as a practical matter, the agency has committed itself to the project as a whole or to any particular features, so as to effectively preclude any alternatives or mitigation measures that CEQA would otherwise require to be considered, including the alternative of not going forward with the project."  (*Save Tara*, at p. 139.)

In the present case, the City correctly conducted its environmental review of the Project before making any project approvals.  Consistent with the CEQA policy of early environmental review, the Project was then revised to reduce the number of trees being removed, and the March 2017 MND included mitigation measures such as replacing protected trees. The Project revisions were incorporated into the vesting tentative tract map approved in March 2020, and reflected in the MND adopted at the same Planning Department meeting.  As we explain next, the conditions incorporated into the vesting tentative tract map approval did not diminish its status as a project approval under CEQA.

*Project Approval*

The longest limitations period applicable to CEQA claims is 180 days, under section 21167, subdivision (d), which "starts running on the date the project is approved by the public agency." (*Van de Kamps Coalition v. Board of Trustees of Los Angeles*

13

*Community College Dist., supra*, 206 Cal.App.4th at p. 1045.) The meaning of the terms "project" and "approval" are clarified in the statutory language, the CEQA Guidelines, and caselaw, and the Planning Department's March 2020 approval of the vesting tentative tract map meets the CEQA definition of a project approval.

"[T]he Legislature clearly sought to place strict limits on the time during which projects may be challenged under CEQA." (*Green Foothills, supra*, 48 Cal.4th at p. 50 [reviewing legislative history and policy reasons for promoting prompt resolution of CEQA challenges].) "To ensure finality and predictability in public land use planning decisions," "CEQA provides unusually short statutes of limitations on filing court challenges to the approval of projects . . . ." (CEQA Guidelines, § 15112, subd. (a); *Stockton, supra*, 48 Cal.4th at p. 499.) Decisions applying those strict limits account for "the Legislature's clear determination that ' "the public interest is not served unless CEQA challenges are promptly filed and diligently prosecuted." ' [Citations.]" (*Stockton*, at p. 500.)

CEQA defines a "project" as "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment," including, among other things, "[a]n activity that involves the issuance to a person of a lease, permit, license, certificate, or other entitlement for use by one or more public agencies." (§ 21065.) The CEQA Guidelines explain further that "project" "refers to the *activity* which is being approved and which may be subject to several discretionary approvals by governmental agencies. The term 'project' does not mean each separate governmental approval." (CEQA Guidelines, § 15378,

14

subd. (c), italics added; see *Citizens for a Megaplex-Free Alameda v. City of Alameda* (2007) 149 Cal.App.4th 91, 105 (*Megaplex-Free Alameda*).) "Under CEQA, 'project' 'refers to the *underlying activity* which may be subject to approval by one or more governmental agencies; it does not refer to each of the several approvals sequentially issued by different agencies.' [Citations.] 'This definition ensures that the action reviewed under CEQA is not the approval itself but the development or other activities that will result from the approval.' [Citation.]" (*Megaplex-Free Alameda, supra*, 149 Cal.App.4th at p. 106.)

CEQA Guidelines define "approval" as "the decision by a public agency which commits the agency to a definite course of action in regard to a project intended to be carried out by any person." (CEQA Guidelines, § 15352, subd. (a).) "With private projects, approval occurs upon the earliest commitment . . ." by the public agency to issue an entitlement. (*Id.* at § 15352, subd. (b).) "Generally speaking, an agency acts to approve a proposed course of action when it makes its *earliest* firm commitment to it, not when the final or last discretionary approval is made." (*North Coast Rivers Alliance v. Westlands Water Dist.* (2014) 227 Cal.App.4th 832, 859, citing *Save Tara, supra*, at p. 134.) An approval under CEQA is "*not* dependent on 'final' action by the lead agency, but by conduct detrimental to further fair environmental analysis." (*John R. Lawson Rock & Oil, Inc. v. State Air Resources Bd.* (2018) 20 Cal.App.5th 77, 99, italics added.)

Here, the City made its earliest firm commitment to the Project when it approved the vesting tentative tract map, even though there were conditions attached to the approval. "The Subdivision Map Act contemplates that the local agency, when it

15

approves a tentative map, will normally attach conditions to that approval, such as the completion of planned subdivision improvements, and will approve the final map only after certifying that the subdivider has complied with those specified conditions." (*Youngblood v. Board of Supervisors* (1978) 22 Cal.3d 644, 652 [conditional approval of a tentative map is an approval for the purpose of determining that map's consistency with the existing general plan].)  The Subdivision Map Act gives local governments authority to regulate the design and improvement of land subdivisions in California.  (*City of West Hollywood v. Beverly Towers, Inc.* (1991) 52 Cal.3d 1184, 1189 (*Beverly Towers*).)  "The local entity's enforcement power is directly tied to its power to grant or withhold approval of a subdivision map." (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 799.)  "The purpose of a conditional tentative map is to identify the requirements to which the developer must conform; the developer must demonstrate that he or she has fulfilled the conditions of the tentative map before approval of the final map will be given.  [Citations.]  The developer cannot record a final map if the conditions of a tentative map are not satisfied." (*Lincoln Place Tenants Assn. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 446–447.)

The City's approval of the vesting tentative tract map here represented its earliest firm commitment to approving the Project.  Just like any other tentative tract map, the final map would not be approved unless the conditions on the tentative tract map were met; but if the developer met the conditions identified on the tentative map, final map approval would be granted.

16

The Objectors call attention to Government Code section 66498.3, subdivision (a), allowing a city to condition approval of a vesting tentative tract map on the developer obtaining the necessary change in zoning.  The purpose of a vesting tentative tract map, in contrast to an ordinary tentative tract map, "is to allow a developer who needs additional discretionary approvals to complete a long-term development project as approved, regardless of any intervening changes in local regulations." (*Beverly Towers, supra*, 52 Cal.3d at p. 1194.)  However, delaying a tentative tract map's vesting status until the zone change is approved only impacts the developer's protection against subsequent changes in local regulations (see 7 Miller & Starr, Cal. Real Estate (4th ed., Dec. 2023 update) § 20:13); it does not change our analysis that approval of the tentative tract map constitutes project approval under CEQA.

*Notices of Decision*

The City's March 25, 2020 NOD was effective to trigger a 30-day statute of limitations on any challenge to the validity of the MND.  "For purposes of the CEQA statutes of limitation, the question is not the substance of the agency's decision, but whether the public was notified of that decision." (*Green Foothills, supra*, 48 Cal.4th at p. 51.)  "[T]he posting of an NOD 'alerts the public that any lawsuit to attack the noticed action or decision on grounds it did not comply with CEQA must be mounted immediately.' " (*Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 401, quoting *Stockton, supra*, 48 Cal.4th at p. 488.)

17

In enacting and amending section 21167, the Legislature clearly sought to place strict limits on the time during which projects may be challenged under CEQA. To this end, it mandated that CEQA suits be brought within 30 days after an NOD is filed. (§ 21167, subds. (b), (c) & (e).) (*Green Foothills, supra,* 48 Cal.4th at p. 50.) "The filing of the notice of determination begins a 30-day statute of limitations on court challenges to approval of the project under CEQA." (*El Dorado Union High School Dist. v. City of Placerville* (1983) 144 Cal.App.3d 123, 129; § 21167, subd. (c); CEQA Guidelines, § 15112, subd. (c)(1).)

Because the Objectors contend that there was no project approval until the City Council approved the zone change in June 2021, they argue that the March 25, 2020 NOD was filed *before* project approval, and was therefore ineffective to trigger the 30-day statute of limitations. However, as already explained, the City correctly conducted its environmental review as early as feasible, and the March 2020 approval of the vesting tentative tract map was a valid project approval under CEQA. Therefore, the March 25, 2020 NOD triggered the 30-day limitations period for challenging CEQA compliance.

*No Subsequent or Supplemental MND*

Once an environmental document (whether an EIR, an MND or a negative declaration) is certified, the public agency's role under CEQA is generally complete. (See § 21166; Guidelines, §15162 subds. (a) and (c); *College of San Mateo, supra,* 1 Cal.5th at p. 945 [for many projects, adoption of the MND "is the end of the environmental review process"].) " 'The

limitations period starts running on the date the project is approved by the public agency and is not retriggered on each subsequent date that the public agency takes some action toward implementing the project.' " (*Citizens for a Green San Mateo v. San Mateo County Community College Dist.* (2014) 226 Cal.App.4th 1572, 1594–1595; *American Chemistry Council v. Department of Toxic Substances Control* (2022) 86 Cal.App.5th 146, 204.)

When a project changes after an agency has already adopted a CEQA document,[11] "section 21166 provides that 'no subsequent or supplemental environmental impact report shall be required' unless at least one or more of the following occurs: (1) '[s]ubstantial changes are proposed in the project which will require major revisions of the environmental impact report,' (2) there are '[s]ubstantial changes' to the project's circumstances that will require major revisions to the EIR, or (3) new information becomes available. (§ 21166.)" (*College of San Mateo, supra*, 1 Cal.5th at p. 945.) " 'If changes to a project or its circumstances occur or new information becomes available after adoption of a negative declaration,' and if no subsequent EIR is required, the agency 'shall determine whether to prepare a subsequent negative declaration, an addendum, or no further documentation.' (CEQA Guidelines, § 15162, subd. (b).) CEQA Guidelines further provide that an agency must prepare an addendum to a previously certified EIR 'if some changes or additions are necessary but none of the conditions described in Section 15162 calling for preparation of a subsequent EIR have

_____

[11] Although the language of section 21166 only describes EIRs, the same criteria apply for a negative declaration or an MND. (*College of San Mateo, supra*, 1 Cal.5th at pp. 945–946.)

19

occurred.' (*Id.* § 15164, subd. (a).) An addendum to an adopted negative declaration 'may be prepared if only minor technical changes or additions are necessary or none of the conditions described in Section 15162 calling for the preparation of a subsequent EIR or negative declaration have occurred.' (*Id.* § 15164, subd. (b).)" (*College of San Mateo, supra*, 1 Cal.5th at p. 946.)

Once the statute of limitations has expired, "any challenges under CEQA to later approvals or to changes in the project are ' "limited to the legality of the agency's decision about whether to require a subsequent or supplemental EIR, or subsequent negative declaration, and the underlying EIR or negative declaration may not be attacked." ' [Citations.] . . . [T]his limitation applies even if the original MND was invalid or in some way defective. [Citations.]" (*Megaplex-Free Alameda, supra*, 149 Cal.App.4th at p. 110.)

Objectors contend that Appellants' reliance on case law involving supplemental or subsequent environmental review is misplaced, and that the cases are distinguishable. They argue that because the City adopted the MND in June 2021 pursuant to CEQA Guidelines, section 15074, subdivision (b), their CEQA challenge was timely. However, because the limitations period for challenging the MND closed 30 days after the March 3, 2020 NOD was filed, and because there have been no changes to the Project requiring a subsequent or supplemental MND, the later adoptions of the same MND cannot restart or retrigger a new limitations period.

20

**DISPOSITION**

The judgment is reversed, and the matter is remanded for the trial court to enter an order dismissing the first amended petition filed by Delia Guerrero and Coyotl + Macehualli Citizens. Appellants the City of Los Angeles and real parties in interest TTLC Los Angeles – El Sereno, LLC and The True Life Companies, LLC are awarded their costs on appeal.

MOOR, J.

We concur:

RUBIN, P. J.

KIM, J.