Filed 6/3/24  Duca v. County of Santa Barbara CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| SUZANNE DUCA, et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>COUNTY OF SANTA BARBARA, et al.,<br><br>Defendants and Appellants. | 2d Civil No. B325999<br>(Super. Ct. No. 21CV02683)<br>(Santa Barbara County)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on May 15, 2024, be modified as follows:

On the counsel page, attorneys for Plaintiffs and Respondents, "Susan F. Petrovick" shall now read "Susan F. Petrovich."

There is no change in the judgment.

_____
YEGAN, ACTING P. J.    BALTODANO, J.      CODY, J.

Filed 5/15/24 Duca v. County of Santa Barbara CA2/6 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SUZANNE DUCA, et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> COUNTY OF SANTA BARBARA, et al., <br><br> Defendants and Appellants. | 2d Civil No. B325999 <br> (Super. Ct. No. 21CV02683) <br> (Santa Barbara County) |

The Live Oak Trail, located in the Cachuma Lake Recreation Area, has been reserved for the exclusive use of equestrians since the late 1980s. In January 2021, the County of Santa Barbara (County) approved a multi-use trail management plan that would allow hikers and bikers to also use the trail. Petitioners obtained a writ of mandate from the superior court directing the County to vacate its approval of that project and return the trail to exclusive equestrian use on the ground that

the County's approval process violated the California Environmental Quality Act (CEQA). (Pub. Res. § 21000, et seq.)[1] The County contends that the petition is time barred because it was filed more than 35 days after the County filed a Notice of Exemption (NOE) relating to the project. (§21167, subd. (d).) It further contends the trial court abused its discretion in mandating that the County comply with the National Environmental Policy Act ("NEPA"), 42 USC § 4332, et seq., and in directing the County to suspend activities that are not part of the project described in the County's notice of exemption (NOE). We affirm the trial court's finding that the writ petition was timely. We conclude portions of the Amended Writ of Mandate exceed the trial court's authority under section 21168.9, subdivision (c) and will therefore order the trial court to strike from the writ any reference to NEPA and paragraph 3 in its entirety.

*Facts*

Santa Barbara County manages the Cachuma Lake Recreation Area under a management contract with the United States Bureau of Reclamation. One of the trails in the recreation area, the Live Oak Trail, has historically been reserved for the exclusive use of equestrians. In 2011, the Bureau of Reclamation adopted a resource management plan that would allow for use of the trail by hikers and mountain bikers. In January 2021, the County announced the Live Oak Trail multi-use program, opening the trail to hikers and mountain bikers.

On January 12, 2021, the County posted a Notice of Exemption (NOE) for the program. At that time, the COVID-19

---

[1] All statutory references are to the Public Resources Code unless otherwise stated.

state of emergency was in effect. The County's website informed the public that, "County public counters are closed until further notice." Members of the public were advised to visit the website of each county department to obtain more specific information about accessing that department's services during the state of emergency.[2]

The County's CEQA notices are handled by the office of the Clerk of the Board of Supervisors. That office's website stated, "The Clerk of the Board's public counter is closed until further notice. The public can submit claims, assessment appeals, and other documents electronically[,] via regular mail (with postmark) or through a physical drop box in the lobby of the County Administration Building. Please enter from the main doors at 105 E. Anapamu."

Angelica Ramirez, the deputy clerk, was responsible for filing and posting NOEs in 2021. During the pandemic, NOEs were posted on a bulletin board in the clerk's office and on a clipboard kept in the first floor lobby of the county administration building. Ramirez explained that a table labeled "'Clerk of the Board'" was placed in front of the main sliding glass doors in the lobby. A clipboard labeled "'Notice of Exemptions'" was lying flat on that table. NOEs were removed from the clipboard after 30 days.

---

[2] The County chose not to avail itself of executive orders adopted by the Judicial Council in response to the pandemic which allowed agencies to satisfy CEQA's public filing, posting, notice and public access requirements by, among other things, posting notices and other materials on the relevant agency's public-facing website. (Governor's Exec. Order Nos. N-54-20, ¶ 8 (April 22, 2020); N-80-20, ¶ 6 (Sept. 23, 2020).)

The County's chief procurement officer, Phung Loman, was responsible for scheduling staff to work in the lobby during the pandemic. Members of the public could access the county administration building through sliding glass doors on Anapamu Street and Anacapa Street. A staff member was sitting in front of each sliding glass door at all times during business hours. If a member of the public wanted access to the building, the staff member would walk to the door and let them in. Loman testified, "The building is always locked because of the sliding door, but we walk – we sitting in front of it." If a member of the public came to the building and wanted access to it, "we would get up and walk towards the door and let them in."

The County did not post CEQA notices on any public-facing website during the pandemic. It did not post signs on the sliding glass doors indicating that CEQA notices were available for review upon entry to the building. None of the County's public-facing websites informed members of the public that CEQA notices were available for review upon entry to the administration building. However, the County maintains that the Clerk of the Board table and the NOE clipboard were visible to any member of the public who approached the doors to the administration building. NOEs were also available upon request from the clerk's office. Members of the public could call or email the clerk's office to request a document.

At a public meeting on January 11, 2021, the County Parks department announced that the Live Oak Trail would be opened to hikers and mountain bikers. A Notice of Exemption describing that project was posted on the Notice of Exemptions clipboard in the lobby of the county administration building on January 12, 2021. On January 15, 2021, the deputy clerk

4

emailed a copy of the NOE to the Santa Ynez Valley Riders. A representative of the Santa Ynez Valley Riders sent a lengthy written objection to the project to the County's community services department on January 31, 2021. In July 2021, petitioners filed their petition for writ of mandate.

After a hearing, the trial court issued its statement of decision concluding the petition was timely because the County did not make the NOE available for public inspection. It further concluded that the project to open the Live Oak Trail to hikers and bikers is not categorically exempt from CEQA review because there is a fair argument that it might have a significant impact on the environment. The trial court issued a writ of mandate directing the County to set aside its approval of the project and suspend all activity on the trail other than horseback riding until the County has "taken all actions necessary to bring the Project's environmental review, decisions, and determinations into full compliance with CEQA, the CEQA Guidelines . . . , [NEPA] and the Court's Statement of Decision." The trial court further mandated that the County "restore any and all measures used to control access to Live Oak Trail that were removed or modified to support the Project in lieu of the former equestrian-only usage . . . ." The County was directed to file an initial return to the writ within 21 days describing the actions taken to comply with the trial court's directives. Finally, the trial court retained jurisdiction over the matter "until the Court has determined that [the County] has complied with the provisions of CEQA, the CEQA Guidelines, NEPA and the Court's Statement of Decision."

Respondents' first amended petition for writ of mandate was accompanied by a complaint for declaratory and injunctive relief. They sought a declaration that the County had

5

no right to change the use of the trail until it complied with CEQA, NEPA and other applicable laws. The trial court found in favor of the County and against respondents on this cause of action. It found in favor the County on the cause of action for declaratory relief.

*Contentions*

The County's appeal raises only two issues. First, the County contends the trial court erred when it concluded the petition was timely filed because CEQA's 180-day statute of limitations applied rather than the statute's alternate 35-day statute of limitations. Second, the County contends the trial court abused its discretion when it mandated compliance with NEPA, required the County to suspend activities that are not part of the project and when it retained jurisdiction if the County reapproves the project.

*Standard of Review*

In determining which CEQA limitations period applies, and whether the County complied with applicable public notice provisions of the statute, we "review the record de novo and are not bound by the trial court's conclusions." (*Environmental Protection Information Center v. California Department of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 479.) "Questions concerning the interpretation or application of CEQA, and the consistency of local regulations with CEQA, are matters of law subject to de novo or independent review." (*California Building Industry Association v. Bay Area Air Quality Management District* (2016) 2 Cal.App.5th 1067, 1081.)

Where a trial court determines that a public agency has made a decision or taken an action without complying with CEQA, section 21168.9 authorizes the trial court to issue a

6

peremptory writ of mandate addressing that noncompliance. "In deciding which mandates to include in its order, a trial court relies on equitable principles." (*Preserve Wild Santee v. City of Santee* (2012) 210 Cal.App.4th 260, 287 (*Preserve Wild Santee*).) We review the trial court's exercise of its equitable power for abuse of discretion. (*Ibid.*)

*Discussion*

*Statute of Limitations*

In deciding whether to approve a project that may cause a direct or reasonably foreseeable indirect physical change in the environment, a local public agency must decide whether the project is exempt from CEQA review under a statutory or categorical exemption. (§§ 21065, 21080, 21084; Cal. Code Regs., tit. 14, § 15300 et seq. ("Guidelines").) If the agency determines that the project is exempt, it may file a notice of exemption NOE documenting that determination. (§ 21152, subd. (b).) The NOE must include, among other things, a brief description of the project and the agency's reasons for declaring it exempt from environmental review. (§§ 21108, subd. (b); 21152, subd. (b); Guidelines, § 15062, subd. (a).) It must be filed with the county clerk and "shall be available for public inspection, and shall be posted within 24 hours of receipt in the office . . . of the county clerk." (§ 21152, subd. (c).) The CEQA Guidelines similarly provide that the NOE "shall be filed with the county clerk" and that copies of the NOE "will be available for public inspection and . . . shall be posted within 24 hours of receipt in the office of the county clerk." (Guidelines, § 15062, subd. (c)(2).)

CEQA provides different statutes of limitations depending upon whether the public agency filed an NOE for the project. (§ 21167, subd. (d).) "An action or proceeding alleging

7

that a public agency has improperly determined that a project is [exempt from CEQA review] shall be commenced within 35 days from the date of the filing by the public agency . . . of the [NOE] . . . ." (*Ibid.*; Guidelines, §§ 15062, subd. (d), 15112, subd. (c)(2).) If the public agency does not file a NOE, "the action or proceeding shall be commenced within 180 days from the date of the public agency's decision to carry out or approve the project . . . ." (§ 21167, subd. (d); Guidelines, § 15112, subd. (c)(5).)

As our Supreme Court has explained, "CEQA establishes and emphasizes *public notification* of an agency's action or decision as the event triggering the shortest applicable limitations period for lawsuits alleging noncompliance with the statute. [¶] The reasons for this approach are clear. Public notification serves the public's right, under CEQA, to be informed of, and to have a voice in, the process of evaluating the environmental issues surrounding a contemplated action or decision." (*Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 501-502 (*Stocken Citizens for Sensible Planning*).)

Here, the trial court found that the 180-day statute of limitations applied because the County did not make the NOE available for public inspection as required by sections 21152, subdivision (c)(1) and 21167, subdivision (d). The County contends the trial court erred because the NOE was posted in the clerk's office and on the clipboard in the lobby of the county administration building. Like the trial court, we are not persuaded. Posting an NOE in an office that is closed to the public, or in a location unknown to the public is not sufficient to make the NOE available for public inspection within the meaning of the statute.

*Sierra Watch v. Placer County* (2021) 69 Cal.App.5th 1 (*Sierra Watch*), is instructive. There, the court of appeal considered whether a document was "available for public inspection" within the meaning of the Brown Act (Gov. Code, § 54950 et seq.) when it was placed in a county clerk's office after business hours. Government Code section 54957.5 requires that every document distributed to members of a county board of supervisors less than 72 hours before a scheduled board meeting be "available for public inspection" at a county office "at the time the writing is distributed" to the board members. (*Id.*, subd. (b).) In that case, a document was distributed to board members and placed in the county clerk's office after business hours, when the office was closed to the public. The court of appeal held that, under these circumstances, the document had not been made "'available for public inspection'" within the meaning of the statute. (*Sierra Watch, supra*, at pp. 10-11.) "[The Brown Act] is not . . . merely concerned with the time a record is *placed* in a location allowing for public inspection; it is instead principally concerned with the time a record is actually *available* for public inspection. . . . No document at the County clerk's office . . . was 'available for public inspection' at . . . a time when the clerk's office was closed." (*Ibid.*)

A similar analysis applies here. Like the Brown Act, CEQA is designed to encourage "'full public participation throughout the environmental review process . . . .'" (*Citizens of Lake Murray Area Assn. v. City Council* (1982) 129 Cal.App.3d 436, 440.) To that end, the statute prioritizes public notice of local agency actions that may impact the environment, including the determination that a project will have no such impact. (*Committee for Green Foothills v. Santa Clara County Board of*

*Supervisors* (2010) 48 Cal.4th 32, 43; see also *Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 629-630 ["'basic purposes'" of CEQA include informing the public about potential environmental effects of proposed activities and disclosing to the public the reasons why a local agency approved a project].) While the statute features unusually short statutes of limitation, it "establishes and emphasizes *public notification* of an agency's action or decision" to trigger those time limits. (*Stockton Citizens for Sensible Planning, supra*, 48 Cal.4th at p. 501.) A notice placed in a building that is closed to the public is not available for public inspection and does not provide the required public notice. (See, e.g., *Sierra Watch, supra*, 69 Cal.App.5th at pp. 10-11.)

Here, the County informed the public that its "public counters" were "closed until further notice." The Clerk of the Board similarly informed the public that its counters were closed until further notice, but that documents could be *submitted* to the clerk by various means. The Clerk took no action to inform the public that County-generated documents, such as CEQA NOEs, could be *accessed* and reviewed in the lobby of the county administration building, even though the office where those notices were usually posted was closed to the public. This information was not placed on the Clerk's website, or on any public-facing County website. No signs containing this information were posted on the entry doors to the administration building. Under these circumstances, members of the public had no reason to believe they could access the county administration building or review NOEs in the lobby of that building. The trial court properly concluded that the NOE was not "available for

10

public inspection" within the meaning of section 21152, subdivision (c).

The County contends notices were publicly accessible because staff was available during business hours to open the doors to the administration building and direct members of the public to the table that held the NOE clipboard. This was not sufficient to make the notices available for public inspection for the reasons we have already stated. The County advised that its public counters were closed until further notice and never informed the public that CEQA notices were available for review in the lobby of the administration building. (*Sierra Watch, supra*, 69 Cal.App.5th at pp. 10-11.)

The County contends the shorter limitations period should apply because interested members of the public had actual knowledge of the NOE and the County's approval of the project. The County is incorrect. "The adequacy of a notice to trigger commencement of the short 35-day statute of limitations of section 21167, subdivision (d) should not turn on whether a party had actual knowledge of the board's action." (*International Longshoremen's & Warehousemen's Union v. Board of Supervisors* (1981) 116 Cal.App.3d 265, 274.) Instead, "public notice" of a local agency action is the "dispositive event" in determining which CEQA limitations period applies. (*Stockton Citizens for Sensible Planning, supra*, 48 Cal.4th at pp. 502-503.)

Finally, the County contends that CEQA itself requires only that an NOE be filed with the county clerk to trigger the statute of limitations. Guidelines sections 15062 and 15112 add the requirement that the NOE be posted and available for public inspection to the statutory filing requirement. The County urges us to find the Guidelines are unenforceable because

11

the posting and public inspection requirements exceed the statutory mandate.  But the statute itself requires an NOE be filed with the county clerk and "available for public inspection . . . ."  (§ 21152, subd. (c)(1).)  The Guidelines are consistent with this statutory mandate and further CEQA's policy to notify the public of government decisions that may impact the environment.

*Scope of Writ*

The County next contends that the mandates included in the trial court's writ were an abuse of discretion because they exceeded the remedies authorized by section 21168.9.  "In deciding which mandates to include in its order, a trial court relies on equitable principles."  (*Preserve Wild Santee, supra,* 210 Cal.App.4th at p. 287.)  The specific remedies available to address violations of CEQA, however, are governed by section 21168.9.  (*Preserve Wild Santee,* at p. 286.)  The statute requires that the trial court include in its order only those mandates necessary to achieve compliance with CEQA. (§ 21168.9, subd. (b).)  Additionally, a trial court may not "direct any public agency to exercise its discretion in any particular way."  (*Id.*, subd. (c).)

The "corrective power" granted to a trial court in section 21168.9 is "distinctly limited – and essentially negative. . . .  A public agency may be directed to comply with CEQA, or to exercise its discretion on a particular subject, but a court will not order that discretion to be exercised in a particular fashion, or to produce a particular result."  (*Schellinger Brothers v. City of Sebastopol* (2023) 179 Cal.App.4th 1245, 1266 (*Schellinger Brothers*).)  We review the trial court's interpretation of the statute de novo. We review for abuse of discretion the trial

12

court's exercise of its equitable powers. (*Preserve Wild Santee, supra,* 210 Cal.App.4th at p. 287.)

In this context, the trial court is required to exercise its discretion within the limits imposed by section 21168.9. (*John R. Lawson Rock & Oil, Inc. v. State Air Resources Board* (2018) 20 Cal.App.5th 77, 102 (*John R. Lawson Rock & Oil*) [§ 21168.9 "controls the court's authority when crafting a remedy for CEQA violations"].) It has no discretion to act in a manner that "'transgresses the confines of the applicable principles of law . . . .'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) "In other words, judicial discretion must be measured against the general rules of law and, in the case of a statutory grant of discretion, against the specific law that grants the discretion." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393.)

When an agency's determination, finding or decision does not comply with CEQA, section 21168.9 requires the trial court to enter an order, in the form of a peremptory writ of mandate, containing one or more of three specified mandates. (*Id.*, subds. (a), (b).) First, the agency may be directed to void the noncompliant determination, finding or decision in whole or in part. (*Id.*, subd. (a)(1).) Second, if the trial court finds that specific project activities related to the noncompliant determination, finding or decision "will prejudice the consideration or implementation of particular mitigation measures or alternatives to the project," it may direct the agency to suspend activities "that could result in an adverse change or alteration to the physical environment," until the agency takes the actions necessary to comply with CEQA. (*Id.*, subd. (a)(2).)

13

Third, the trial court may mandate that the agency "take specific action as may be necessary to bring the determination, finding, or decision into compliance" with CEQA.  (*Id.*, subd. (a)(3).)  Regardless of which mandates the trial court includes in its order, it may not "direct any public agency to exercise its discretion in any particular way," and it may only include the mandates necessary to achieve compliance with CEQA.  (*Id.*, subds. (b), (c); *Preserve Wild Santee, supra*, 210 Cal.App.4th at p. 287.)

The trial court's writ of mandate requires the County to set aside the NOE and vacate "all approvals, actions, and activities adopted and implemented as part of the change of use of Live Oak Trail from equestrian-only use of the Live Oak Trail to mixed hiking and mountain biking . . . ."  It further requires the County to "suspend all Live Oak Trail recreational activity other than horseback riding and any and all other activities pursuant to the challenged Project decisions, determinations, and approvals that could result in any change or alteration to the physical environment" until the County takes all actions necessary to comply with CEQA, the CEQA Guidelines, NEPA and the trial court's statement of decision.

The trial court's third mandate requires the County to restore "any and all measures used to control access" to the trail that were removed to support its use by hikers and bikers.  This mandate includes, but is not limited to, restoration of:  (a) the security gate at the entrance to the trail's parking area and gates at the trail head and along the trail that are secured with combination locks; (b) signs at the trail entrance and along the trail; (c) "trail segments formerly available to equestrians but locked as part of the Project;" (d) the prior permit and user fee

14

system requiring equestrians to check in with the Lake Cachuma Campground, pay an entrance fee for a day-use pass, provide identification and agree to contact Campground staff upon exiting the trail; (e) a similar system for trail access by annual pass holders; (f) the trail's parking area to allow parking of horse trailers.  Finally, the County was ordered to "restore the pre-existing parking enforcement process by patrolling the parking area daily and ticketing any vehicle not displaying the user pass."

The County contends the trial court abused its discretion when it included these mandates in its order because section 21168.9 does not authorize the trial court to mandate compliance with NEPA.  It further contends the trial court abused its discretion when it ordered the County to suspend specific activities because the trial court did not find that those activities would "prejudice the consideration or implementation of particular mitigation measures or alternatives to the project," as required by section 21168.9, subdivision (a)(2).  Finally, the County contends the trial court abused its discretion when it mandated that the County take specific actions, including those listed in paragraph 3 of the writ, because those mandates are not limited to actions that could result in adverse changes or alterations to the physical environment and because they direct the County to exercise its discretion to manage the trail in particular ways.

Respondents contend the trial court did not abuse its discretion because section 21168.9 allows it to mandate specific actions necessary to achieve compliance with CEQA.  We are persuaded, however, that portions of the trial court's order exceed its authority under subdivision (c) of section 21168.9.

15

"Our analysis of which 'mandates' listed in subdivision (a) of section 21168.9 should be included in the writ issued to [the County] begins with the basic proposition that the purpose of the 'mandates' is to achieve compliance with CEQA. . . . [¶] To achieve the remedial goal of compliance with CEQA, we must identify and address each failure to comply. Restated in statutory terms, we must identify the 'determination, finding or decision [the County] . . . made without compliance with [CEQA].' [Citation.] Once a failure to comply with CEQA has been identified, we will consider which mandate (or mandates) is 'necessary to achieve compliance with [CEQA].' [Citation.]" (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 758.) A local agency may be ordered to comply with CEQA, but the manner in which it achieves compliance "is a matter first left to the agency's discretion." (*Voices for Rural Living v. El Dorado Irrigation Dist.* (2012) 209 Cal.App.4th 1096, 1113.)

Here, the trial court found the County did not comply with CEQA when it adopted an NOE for its decision to open use of the Live Oak Trail to hikers and bikers. The court found there was substantial evidence supporting a fair argument that opening the trail to multiple uses may have a significant impact on the environment. As a result, the determination to allow multiple uses of the trail was not exempt from CEQA review, making the County's adoption of an NOE inappropriate. To address that lack of compliance with CEQA, the trial court ordered the County to set aside its decision "making a determination of exemption" and to vacate "all approvals, actions, and activities adopted and implement as part of the change of use of Live Oak Trail from equestrian-only use of the Live Oak Trail

16

to mixed hiking and mountain biking . . . ."  It remanded the matter to the County for reconsideration.  This portion of the writ falls squarely within the trial court's discretion under section 21168.9, subdivision (a)(1) because it requires the County to set aside the determination that the trial court found to be in violation of CEQA.  (*John R. Lawson Rock & Oil, supra,* 20 Cal.App.5th at p. 102.)

The trial court's second mandate, in paragraph 2 of the writ, requires the County to "suspend" all "recreational activity" on the trail other than horseback riding until the County has "taken all actions necessary to bring the Project's environmental review, decisions and determinations into full compliance with CEQA, the CEQA Guidelines . . . the [NEPA] and the Court's Statement of Decision."  To the extent this mandate requires the County to comply with NEPA, we conclude it exceeds the trial court's authority under section 21168.9, subdivision (a).  The statute authorizes the trial court to mandate compliance with CEQA.  It says nothing whatsoever about mandating compliance with other statutes.  Moreover, the record indicates that the parties did not litigate the question whether County's actions violated the federal statute and the trial court's statement of decision includes no specific findings to that effect. The trial court abused its discretion when it included a mandate to comply with NEPA.

Paragraph 3 of the writ requires the County to take a series of very specific actions to "restore any and all measures used to control access to Live Oak Trail that were removed or modified to support the Project in lieu of the former equestrian-only usage . . . ."  We conclude this mandate is an abuse of the trial court's discretion because it purports to direct the County to

17

comply with CEQA in particular ways.  (§ 21168.9, subd. (c).)  For example, the trial court has ordered the County not simply to void its approval of the multi-use plan, but to restore equestrian-only access to the trail.  Further, the trial court's order mandates that the County achieve that result by installing or restoring particular gates, a specific type of lock on those gates, a specific means of accessing the combination to those locks and the precise location where day use permits and lock combinations may be distributed.  The trial court has also mandated that the County exercise its police powers in a specific way by patrolling a parking lot "daily and ticketing any vehicle not displaying the user pass."

Section 21168.9 allows the trial court to direct the County to comply with CEQA.  It does not authorize the trial court to mandate specific actions the County must undertake, or precise regulations it must adopt to achieve that compliance. (*Schellinger Brothers, supra,* 179 Cal.App.4th at p. 1266; *Preserve Wild Santee, supra*, 210 Cal.App.4th at p. 287.)  The trial court had discretion to mandate that the County vacate the NOE, and with it the authorization for hikers and bikers to use the Live Oak Trail, until the County complied with CEQA.  It lacked discretion, however, to mandate that the County take any specific action to achieve compliance.  Thus, paragraph 3 of the writ exceeds the trial court's authority under section 21168.9, subdivision (c).

*Conclusion*

The trial court correctly determined the writ petition to be timely under section 21167, subdivision (d).  It erred, however, in mandating that the County comply with NEPA and in including paragraph 3 in its order.  The trial court is ordered on remand to strike from its Amended Writ of Mandate the

18

directive to comply with NEPA and paragraph 3 in its entirety. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Rachel Van Mullen, County Counsel, Lina Somait, Sr. Deputy, Callie Patton Kim, for Defendants and Appellants.
Brownstein Hyatt Farber Schreck and Susan F. Petrovick, Matthew L. Hofer and Paige E. Samblanet, for Plaintiffs and Respondents.